[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

FILED

U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
February 23, 2005
THOMAS K. KAHN
CLERK

_____

No. 04-14276
Non-Argument Calendar

_____

D. C. Docket No. 03-00023-CV-WTM-5

MICHAEL D. KELLEY,

Plaintiff-Appellant,

DANIEL HOWARD,

Plaintiff,

versus

PATRICIA A. HICKS,
PEGGY COOPER,

Defendants-Appellees,

CORRECTIONS CORP. OF AMERICA,

Defendant.

_____

Appeal from the United States District Court
for the Southern District of Georgia

_____

**(February 23, 2005)**

Before CARNES, MARCUS and KRAVITCH, Circuit Judges.

PER CURIAM:

## I. Introduction

Plaintiff Michael Kelley, a former inmate at Coffee County Correctional Facility ("CCF"), appeals the district court's grant of summary judgment in favor of defendants Patricia Hicks and Peggy Cooper in his pro se civil rights action under 42 U.S.C. § 1983. Kelley alleges that warden Hicks and assistant warden Cooper were deliberately indifferent to his future health by allowing him to be exposed to harmful levels of environmental tobacco smoke ("ETS") while he was incarcerated at CCF.[1]

Specifically, Kelley alleges the following: (1) there was not a designated smoking area for inmates who smoke; (2) the defendants did not indicate where the smoking areas were; (3) there were inadequate smoking breaks; (4) cigarette lighters were not mounted in the outside smoking areas; (5) "no smoking" signs were not posted; (6) there were no smoking cages for inmates in the event it rained;

---

[1] Originally, Kelley filed his complaint jointly with another inmate Daniel Howard against Hicks, Cooper, and Corrections Corporation of America ("CCA") alleging that the defendants were deliberatively indifferent to the future health risks posed by exposure to ETS, that they failed to enforce Georgia Department of Corrections ("DOC") policies prohibiting smoking inside CCF, and deprived plaintiffs equal protection. After conducting the required screening under the Prison Litigation Reform Act, 28 U.S.C. §§ 1915 and 1915A, the district court dismissed Howard from the case, the claims against CCA, and the equal protection claim, but permitted Kelley to proceed with his deliberate indifference claims against Hicks and Cooper.

(7) there was inadequate ventilation; and (8) the commissary sold matches to inmates for a period of time, in violation of DOC policies.

After cross motions for summary judgment, the magistrate judge recommended that the defendants' summary judgment motion be granted. The magistrate judge found, *inter alia*, that Kelley failed to show a risk to his future health, and that he simply feared a future risk, which was insufficient to state a claim. Additionally, the magistrate judge determined that the defendants had a no-smoking policy in place, which they enforced to the best of their ability. Finally, the magistrate judge found that there was no evidence that the headaches Kelley complained of were related to ETS. After conducting an independent review, the district court adopted the magistrate judge's recommendation.[2] Kelley now appeals the district court's grant of summary judgment.

## II. Standard of Review

This court reviews a district court's grant of summary judgment de novo, viewing the evidence in the light most favorable to the party opposing the motion. Wilson v. B/E Aerospace, Inc., 376 F.3d 1079, 1085 (11th Cir. 2004). Summary judgment is appropriate when "there is no genuine issue as to any material fact and

---

[2] There is no merit to Kelley's argument that the district court did not conduct a de novo review of the magistrate judge's recommendation. The district court indicated in its order that it conducted an independent review.

3

... the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c).

### III.  Discussion

The Eighth Amendment governs "the treatment a prisoner receives in prison and the conditions under which he is confined."  Helling v. McKinney, 509 U.S. 25, 31 (1993).  The Supreme Court has held that a prison official's "deliberate indifference to [the] serious medical needs of [a] prisoner[] constitutes the unnecessary and wanton infliction of pain...proscribed by the Eighth Amendment." Estelle v. Gamble, 429 U.S. 97, 104 (1976) (quotation marks and citation omitted). As this court has explained,

> To show that a prison official acted with deliberate indifference to serious medical needs, a plaintiff must satisfy both an objective and a subjective inquiry.  First, a plaintiff must set forth evidence of an objectively serious medical need.[3]  Second, a plaintiff must prove that the prison official acted with an attitude of deliberate indifference[4] to that  need.

Farrow v. West, 320 F.3d 1235, 1243 (11th Cir. 2003) (quotation marks and

---

[3] A serious medical need is considered "one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention."  Farrow v. West, 320 F.3d 1235, 1243 (11th Cir. 2003) (quoting Hill v. Dekalb Reg'l Youth Det. Ctr., 40 F.3d 1176, 1187 (11th Cir. 1994)).

[4] To establish that a prison official acted with deliberate indifference to a serious medical need, "the prisoner must prove three facts: (1) subjective knowledge of a risk of serious harm; (2) disregard of that risk; and (3) by conduct that is more than mere negligence."  Brown v. Johnson, 387 F.3d 1344, 1351 (11th Cir. 2004).

4

citations omitted).

This is the first case in this Circuit to address an Eighth Amendment claim based on exposure to ETS. The Supreme Court, however, directly addressed such a claim in Helling and provided clear guidance on this issue. There, the Court held that a prisoner can state a cause of action under the Eighth Amendment for exposure to ETS by "alleging that [prison officials] have, with deliberate indifference, exposed him to levels of ETS that pose an unreasonable risk of serious damage to his future health." Helling, 509 U.S. at 35. As for the objective factor, the prisoner must show that he himself is being exposed to unreasonably high levels of ETS. Id. Relevant facts will include whether the prisoner remains housed in the environment and whether the facility has enacted a formal smoking policy. Id. at 35-36. The objective factor further considers "a scientific and statistical inquiry into the seriousness of the potential harm and the likelihood that such injury to health will actually be caused by exposure to ETS...[and] also requires a court to assess whether society considers the risk that the prisoner complains of to be so grave that it violates contemporary standards of decency to expose *anyone* unwillingly to such a risk." Id. at 36 (emphasis in original). As for the subjective factor, the prisoner must show that prison authorities demonstrated a "deliberate indifference" to his plight. Id. The adoption of a smoking policy "will

5

bear heavily on the inquiry into deliberate indifference."  Id.

Here, the district court properly granted summary judgment because Kelley

fails to satisfy the standards articulated in Helling.  Significantly, in Helling, the

plaintiff was assigned to a cell with another inmate who smoked five packs of

cigarettes a day.  Id. at 28.  Here, Kelly did not allege that his cellmate was a

smoker, and, therefore, this case is distinguishable from Helling.  In this case,

Kelley describes his health issues as concern about the future health of "his eyes,

lungs and heart."  He alleges that other inmates smoked inside the facility and had

no access to outside smoking areas when it rained.  The defendants explain,

however, that the facility had a no-smoking policy in place, and that any inmate

caught smoking inside would be disciplined.[5]  Kelley alleges that other inmates in

his pod smoked inside and that the ventilation was inadequate.  Notably, he fails to

proffer any evidence, other than his own self-serving statements, to show that the

ventilation was not sufficient.  Moreover, Kelley has since been released from

prison, and, therefore can no longer be exposed to ETS at CCF.  Furthermore,

Kelley offers no evidence to show that his headaches were causally linked to his

---

[5] Moreover, in response to Kelley's interrogatories, Hicks stated that (1) inmates were permitted smoke breaks of five to ten minutes every two hours; (2) inmates were permitted to smoke only outdoors in the designated fenced-in area behind the living facility; (3) CCF was a nonsmoking facility, and, as such, it was not necessary to post "no smoking" signs; (4) officers supervising breaks carried lighters; and (5) each building was air conditioned and had ventilation.  Hicks also submitted copies of DOC policy restricting smoking to outdoors at designated times and prohibiting the sale of matches to inmates.

6

exposure to ETS.[6]  Thus, Kelley fails to objectively show that he was exposed to

unreasonably high levels of ETS and that the risk to his health was so "grave" as to

"violate contemporary standards of decency."  Compare Oliver v. Deen, 77 F.3d

156, 158 (7th Cir. 1996) (holding that passive tobacco exposure was not a serious

threat to an inmate who had a smoking cellmate for 133 days, even though the

plaintiff suffered from mild asthma) with Rochon v. City of Angola, 122 F.3d 319,

320 (5th Cir. 1997) (inmate was "required to live and work in 'environments filled

with tobacco smoke'").

Even if Kelley could satisfy the objective factor of his claim, he would fail

on the subjective component.  Kelley offers no evidence to show that the

defendants acted with deliberate indifference.  In essence, all Kelley has done is to

produce personal observations of smoke inside the prison.  At most, he established

that Hicks and Cooper were negligent in enforcing the non-smoking policy, as

other inmates attested that smoking occurred inside CCF.  Mere negligence,

however, is insufficient to establish deliberate indifference.  Farrow, 320 F.3d at

1243.  Kelley alleges that inmates were permitted to purchase up to fifty dollars

worth of tobacco products a week.  But just because an inmate's total commissary

purchase might equal fifty dollars a week, does not demonstrate that inmates, in

---

[6] The neurologist whom Kelley visited concluded that Kelley suffered from tension
headaches.

7

fact, spent the entire fifty dollars on tobacco products. Furthermore, even if the commissary sold matches to inmates for a period of time in violation of DOC policies, Kelley cannot show that the defendants acted with deliberate indifference, as Cooper explained that neither she nor Hicks were in charge of CCF at that time. Thus, Kelley fails to establish that the defendants acted with deliberate indifference.

## IV. Conclusion

Accordingly, the district court properly granted summary judgment in favor of the defendants. For the foregoing reasons, we AFFIRM.