[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS
FOR THE ELEVENTH CIRCUIT

----------------------------------------

No. 04-16103
Non-Argument Calendar

----------------------------------------



FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
February 1, 2006
THOMAS K. KAHN
CLERK

D.C. Docket No. 03-01856-CV-ORL-22-KRS

SCOTT RAY ZABRISKIE,

Plaintiff-Appellant,

versus

COURT ADMINISTRATION, of the Ninth Judicial
Circuit in and for Orange County, FL,
MATT BENEFIELD, Administrator, Court Administration
of the Ninth Judicial Circuit in and for Orange County, FL,
CHUCK HYADOVITZ, employee, Court Administration of
Ninth Judicial Circuit in and for Orange County, FL
JANE DOES, employees, Court Administration of the Ninth
Judicial Circuit in and for Orange County, FL,

Defendants-Appellees.

----------------------------------------------------------------
Appeal from the United States District Court
for the Middle District of Florida
----------------------------------------------------------------
**(February 1, 2006)**

Before EDMONDSON, Chief Judge, ANDERSON and BLACK, Circuit Judges.

PER CURIAM:

Plaintiff-Appellant Scott Ray Zabriskie, a private citizen, filed a pro se complaint, under 42 U.S.C. §§ 1983 and 1988, against the Court Administration of the Ninth Judicial Circuit in Orange County, Florida, and some of its employees in their official capacities, alleging that Defendants violated his right of access to the courts. Plaintiff appeals the district court's orders (1) dismissing his claims for money damages as barred by Eleventh Amendment immunity, and (2) granting summary judgment in favor of Defendants on his claim for injunctive relief. No reversible error has been shown; we affirm.

In his complaint, Plaintiff claimed that he was a pro se litigant in four civil cases before the state circuit court. According to Plaintiff, Defendants, including court administrator Matthew Benefiel and assistant court administrator Chuck Hyadovitz, violated his constitutional rights, particularly his right to equal protection and to due process, when they denied him continuing access to the court's Self Help Center, a facility in the courthouse provided to all pro se litigants. Plaintiff contended that this denial prevented him from preparing for hearings in his civil cases at the state circuit court. Defendants countered that Plaintiff was barred from the Center because he repeatedly had engaged in disruptive and inappropriate conduct.

2

We conclude that the district court correctly dismissed Plaintiff's claims for money damages as barred by Eleventh Amendment immunity. Plaintiff argues that the court administration is not an arm of the state of Florida but is a local branch of government: he contends that funding for the court administration predominantly is local and that its controlling officials are elected locally.

We review a district court's grant of a motion to dismiss de novo; and we take as true the facts as alleged in the complaint. Owens v. Samkle Auto., Inc., 425 F.3d 1318, 1320 (11th Cir. 2005). "The Eleventh Amendment protects a State from being sued in federal court without the State's consent." Manders v. Lee, 338 F.3d 1304, 1308 (11th Cir. 2003)(en banc), cert. denied, 124 S.Ct. 1061 (2004). Eleventh Amendment immunity also bars suits brought in federal court against defendants acting as an "arm of the State," which includes agents and instrumentalities of the State even though these entities are not labeled a "state officer" or "state official." Id. To determine whether an entity is an "arm of the State" for Eleventh Amendment purposes, this Court examines: "(1) how state law defines the entity; (2) what degree of control the State maintains over the entity; (3) where the entity derives its funds; and (4) who is responsible for judgments against the entity." Id. at 1309.

At least three of the Manders elements weigh in favor of Eleventh Amendment immunity for Defendants. First, Florida law addressing payment of judgments against certain public employees defines "agency of the state" or "state agency" as including the judicial branch. See Fla. Stat. Ann. § 111.071(3). Florida law also indicates that the court administration of a circuit court--and its employees--are part of the "state courts system." See Fla. Stat. Ann. § 25.382. The first Manders element weighs in favor of Defendants: they are part of the "state courts system," which, as a component of the judicial branch, is a state agency.

Second, the State exercises substantial control over Defendants. State court administrators are appointed and terminated by the Chief Judge of the Circuit Court, a state officer who is responsible to the Chief Justice of the Florida Supreme Court, which, as part of the judicial branch, is considered a state agency. See Fla. Stat. Ann. § 111.071(3); Fla.R.Jud.Admin. 2.050(d). Benefiel stated that his salary is paid by the State of Florida, that he participates in the state retirement system, that he receives no compensation from a county or municipality, and that all directives and instructions for fulfilling his role as court administrator come exclusively from the Chief Judge. And Hyadovitz, as assistant court administrator, reports to Benefiel.

4

Third, the record is inconclusive about whether the Ninth Judicial Circuit derived its funding from the state at the time Plaintiff filed his complaint. Benefiel is paid by the state and participates in the state retirement program. But the record is silent on who pays Hyadovitz's salary. And by a constitutional amendment occurring after Plaintiff filed suit, the State assumed some portions of court system funding previously provided by counties. See Fla. Const. Art. 5, § 14(b), (c). Given that, as the district court stated, "[f]unding for Florida's judicial branch is in flux," we cannot determine on this record whether the third Manders element favors immunity for Defendants.

Fourth, the record shows that the state treasury would be responsible for money judgments against Defendants. See Manders, 338 F.3d at 1327 n.51 (noting that, under Supreme Court precedent, "the state treasury factor is a 'core concern' of Eleventh Amendment jurisprudence"). Florida has a Risk Management Trust Fund that provides insurance for, among other things, "federal civil rights actions under 42 U.S.C. § 1983 or other similar federal statutes." See Fla. Stat. Ann. § 284.30. This fund covers all state departments and their employees. See Fla. Stat. Ann. § 284.31. As we stated, under Florida law, the judicial branch is a state agency. And the state court system--including employees of the circuit courts--is part of the judicial branch. Thus, the Risk Management

5

Trust Fund would cover circuit court administrators and their staffs. Furthermore, Benefiel and the circuit court's counsel, Robin Berghorn, stated that, in their experience, judgments rendered against the court administrator or his staff would be paid by the State out of the Risk Management Trust Fund.

The Manders analysis weighs in favor of Eleventh Amendment immunity for Defendants. The district court's dismissal of Plaintiff's claims for money damages was proper.

Plaintiff also challenges the district court's grant of summary judgment in favor of Defendants on his claims for injunctive relief. He argues that Defendants, in denying him access to the Self-Help Center, violated his due process rights by not posting rules against some of the conduct for which he was banned from the Center. Thus, he claims that he was denied meaningful access to the court system. And he contends that his equal protection rights were violated when he was asked to leave the Center and later issued a trespass warning. Plaintiff suggests that, as a pro se litigant, he should be afforded the same status as prisoners.

We review a district court's grant of summary judgment de novo; we view the evidence in the light most favorable to the party opposing the motion. Kelley v. Hicks, 400 F.3d 1282, 1284 (11th Cir. 2005). Summary judgment is appropriate

when "there is no genuine issue as to any material fact and . . . the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c).

We first conclude that Plaintiff suffered no due process violation: Plaintiff has no constitutional right to be provided access to the Self-Help Center and its resources. We are aware that the right of access to the courts is protected by the Due Process Clause of the Fourteenth Amendment. See Tennessee v. Lane, 124 S.Ct. 1978, 1988 (2004). And the Supreme Court has written that, for prisoner litigants, the right of access to the courts "requires prison authorities to assist inmates in the preparation and filing of meaningful legal papers by providing prisoners with adequate law libraries or adequate assistance from persons trained in the law." Bounds v. Smith, 97 S.Ct. 1491, 1498 (1977). But Plaintiff is not a prisoner or in custody of the state: he differs from prisoner litigants because he has freedom to move about and to seek access to additional sources of information and assistance apart from a prison law library.

We also observe that Plaintiff was not denied meaningful access to the courthouse. Plaintiff did not assert that he was prevented from filing papers and from attending hearings in his cases. Instead, Plaintiff alleged that he was denied

7

access to the Center, which he deemed necessary for his hearing preparation.[1]  But we doubt that the Center, with its limited resources, is essential for assisting pro se litigants in preparing for their hearings.[2]  Evidence in the record shows that a nearby public library provided legal research materials.  We are aware of no constitutional requirement for government officials to provide non-prisoner, pro se litigants with access to a facility like the Self-Help Center.  We discern no due process violation: the substantive constitutional right that Plaintiff seeks to enforce does not exist.

We also reject Plaintiff's claim that his equal protection rights as a pro se litigant were violated.  No fundamental constitutional right and no suspect classification is involved: the Equal Protection Clause thus requires only that Defendants' treatment of Plaintiff be rationally related to a legitimate government interest.  See Lofton v. Sec'y of Dep't of Children & Family Servs., 358 F.3d 804, 818 (11th Cir. 2004), cert. denied, 125 S.Ct. 869 (2005).  Here, Defendants assert that their exclusion of Plaintiff from the Center was rationally related to the

---

[1] The trespass warning Plaintiff received did not ban him from the courthouse for official county business.

[2] The Center is a small room within the courthouse provided as a courtesy to the public.  The Center contains three computers with internet access, tables and cubicles, telephones, a facsimile machine, and a copy machine supplied by the Orange County Bar Association.  The computers do not link to court files or to the court's clerk's office, and the Center does not provide unique access to legal research.

8

legitimate interest of maintaining order and security at the Center. We agree with Defendants.

Plaintiff disputes some of the misconduct that Defendants have proffered to justify his exclusion from the Center. But he does not deny that he switched the homepage of a Center computer from the Orange County website to www.hell.org and that he left this address on the monitor. Plaintiff also does not dispute that Defendants received complaints about his behavior from other Center patrons.[3] Plaintiff's later statement that he "did not curse at anyone" (emphasis added) does not rebut this evidence. Plaintiff also admitted that he was involved in an altercation with other Center users, although he claimed that he was not at fault. And Plaintiff's statements that his behavior never was "unacceptable," or "concerning or suspicious," are too conclusory to create an issue of fact about whether Defendants received complaints about his conduct from other Center users. See Leigh v. Warner Bros., Inc., 212 F.3d 1210, 1217 (11th Cir. 2000) (stating that unsupported conclusory statements have no probative value in opposing summary judgment).

_____

[3] Plaintiff stated in an affidavit "I am very sorry if I used profanity that other people heard and were offended about. I don't remember, sometimes I just think out loud[,] especially when there's noone [sic] else to talk to or bounce ideas off of."

In sum, the district court properly dismissed Plaintiff's claims for money damages as barred by Eleventh Amendment immunity;[4] and the district court did not err in granting summary judgment in favor of Defendants on Plaintiff's claim for injunctive relief.

AFFIRMED.

---

[4] We reject Plaintiff's argument that the district court erred in denying his motion to amend the complaint to add claims against Benefiel and Hyadovitz in their individual capacities, filed after the district court dismissed his claims for money damages against Defendants in their official capacities. As Plaintiff showed no violation of his constitutional rights, the district court did not abuse its discretion in denying Plaintiff leave to amend his complaint. See Bryant v. Dupree, 252 F.3d 1161, 1163 (11th Cir. 2001) (stating that district court need not allow amendment where, among other things, amendment would be futile).