[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 05-16393
Non-Argument Calendar

_____

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
April 21, 2006
THOMAS K. KAHN
CLERK

D. C. Docket No. 03-00166-CV-5-MCR/WCS

MURRAY HILTON,

Plaintiff-Appellant,

versus

FRANK MCHUGH,
DR. SEYMORE GOSS,

Defendants-Appellees,

JERRY G. RABION,
Warden, et al.,

Defendants.

_____

Appeal from the United States District Court
for the Northern District of Florida

_____

**(April 21, 2006)**

Before MARCUS, WILSON and FAY, Circuit Judges.

PER CURIAM:

Murray Hilton, a Florida state prisoner, appeals pro se the district court's grant of summary judgment to the defendants, Advanced Registered Nurse Practitioner Frank McHugh and Dr. Seymore Goss, on his 42 U.S.C. § 1983 claim alleging that the defendants violated his Eighth Amendment right to be free of cruel and unusual punishment. On appeal, Hilton argues that the district court erred by finding that there was no evidence of deliberate indifference with regard to the treatment provided to him. For the reasons set forth more fully below, we affirm the district court.

Hilton, proceeding pro se, filed in district court an amended § 1983 complaint against McHugh and Goss,[1] alleging that they were state prison medical personnel who violated the Eighth Amendment by acting with deliberate indifference in failing to provide necessary medical treatment to his known serious conditions of genital cysts and elbow bursitis.[2]

In response, the defendants filed a "special report" at the direction of the court, and included as evidence the sworn affidavits of Goss and McHugh. Goss

---

[1] On October 10, 2003, the court, finding that McHugh and Goss were the only proper defendants, dismissed Hilton's first complaint, which named, among others, prison warden, Jerry Rabion and two assistant wardens. Hilton does not appeal the dismissal of his original complaint naming those defendants. Thus, they are not discussed in this opinion.

[2] In his appellate brief, Hilton does not raise any argument regarding the cysts and argues only that the bursitis claim was incorrectly decided. Because Hilton does not offer any argument regarding the cysts, the issue is deemed abandoned. Rowe v. Schreiber, 139 F.3d 1381, 1382 n.1 (11th Cir. 1998).

stated that he was a physician employed by the state and that he had treated Hilton at Calhoun Correctional Institution, where Hilton was incarcerated. He further stated that he had treated Hilton on only one occasion for cysts on Hilton's penis, but not for Hilton's elbow, and Hilton had been provided ibuprofen, antibiotics, and other medications, as was appropriate for Hilton's medical condition. Goss averred that he had never refused treatment to Hilton.

McHugh stated that he was an Advanced Registered Nurse Practitioner (ARNP), and treated Hilton at his place of incarceration. McHugh treated Hilton for two cysts on Hilton's penis, and surgically removed one of those cysts. As to the elbow, McHugh, in his medical opinion, did not think that referral to a specialist was needed, and he stated that he had never denied McHugh treatment.

The court construed the defendants "special report" as a motion for summary judgment, and ordered the parties to submit any materials in support of or opposition to summary judgment. The court's order gave Hilton notice of when summary judgment would be taken under advisement, advised Hilton of his burden as the party opposing summary judgment, and indicated the kinds of evidence that Hilton could rely upon in opposition to the defendants motion.

Among the evidence in the record was Hilton's medical records. The records indicated that Hilton was examined on April 23, 2002, by Erlinda Perez,

3

and was found to have swelling in his left elbow with good range of motion, with an assessment that he suffered from chronic, intermittent joint pain. The record indicated that an x-ray would be recommended for Hilton's left elbow. The radiology report indicated "no evidence of bone or joint abnormality."

On May 20, 2002, McHugh examined Hilton, and although the handwritten notes are difficult to decipher, it appears that he diagnosed Hilton with bursitis in his left elbow and prescribed, among other things, ibuprofen. McHugh examined Hilton again on June 11 for complaints of swelling in Hilton's left knee, and Hilton again was prescribed ibuprofen.[3] McHugh next examined Hilton on July 24, where Hilton complained of swelling in his left knee. McHugh noted that there was some swelling in the knee, but good range of motion, and prescribed ibuprofen. On August 6, McHugh prescribed ibuprofen, but the notes are otherwise illegible. Approximately one month later, McHugh again treated Hilton, who complained of intermittent knee pains, and McHugh again prescribed ibuprofen. On September 9, Hilton was seen by McHugh for a condition unrelated to his elbow.

As best as can be discerned, the first time that Hilton complained of elbow

---

[3] Hilton submitted a document from an unknown source indicating that aspirin or ibuprofen is one treatment option that often relieves pain and swelling. The document also indicated that "Bursitis often clears up within a week, particularly if the aggravating condition is avoided and the inflamed joint is rested."

pain again was on October 18, to a different nurse than McHugh, and the records indicate that Hilton was prescribed ibuprofen and an analgesic rub. The notes also indicate that the elbow, while swollen and containing some fluid, was not tender to the touch. McHugh then saw Hilton on October 21, noted that Hilton's elbow had "slight swelling" and good range of motion, and prescribed an elastic elbow support and ibuprofen.

On November 13, Hilton submitted an informal grievance regarding his elbow, and the notes indicate that the Regional Health Services Manager denied the grievance after finding that Hilton had been treated and no further treatment was necessary. Hilton filed another grievance regarding his elbow on December 5, which was also denied, noting that Hilton had been seen and assessed on October 21, had not followed up, and had sick call (SC) available to him.

The first mention of Dr. Goss appears on December 27, and the records indicate that Hilton was diagnosed as having genital herpes on his penis and was prescribed tetracycline, valtrex, and ibuprofen, with instructions to be re-evaluated by an ARNP in 10 days. On January 6, 2003, McHugh evaluated Hilton, only for the penile lesions, and prescribed several things, the only legible one being ibuprofen. One week later, McHugh treated Hilton for cysts on his left testicle and groin. On March 13, McHugh and another nurse treated Hilton, but not for pain in

5

his elbow.  The same occurred on March 27.  Hilton was then referred to Dr. Goss, who evaluated Hilton on April 4, and found "no evidence of herpetic lesions."

From April 18 through the middle of June, McHugh and other nurses treated Hilton for conditions mostly unrelated to his elbow, although the records indicated that Hilton was seen by a nurse other than McHugh during this time to refill a prescription of ibuprofen for his knees and elbow.   On July 7, Hilton again had his prescription for ibuprofen renewed.  Two days later, McHugh treated Hilton for a complaint of arthritis by prescribing ibuprofen.  On July 21, Hilton again visited sick call complaining of arthritis in his knees and elbows, and the records reflect that Hilton had some swelling in his left elbow and his prescription for ibuprofen was renewed.  It was renewed again on August 1, August 11, August 22, and August 26.

On September 3, a nurse other than McHugh treated Hilton for complaints of elbow joint pain.  The records indicate that Hilton's elbow was swollen and stiff, and he was prescribed an analgesic balm.  On September 24, Hilton complained of joint pain in his left elbow, and McHugh noted that Hilton was suffering from bursitis with slight swelling.  McHugh prescribed an elbow brace to be worn for six months as well as the medications Zyrtec and Vioxx.  No further records were submitted.  The defendants then argued to the court that they were entitled to

qualified immunity and that their treatment of Hilton was proper.

In response, Hilton argued that the defendants, especially McHugh, had been treating him for his elbow and had prescribed ibuprofen, Naprosyn, and Vioxx, as well as two elastic supports, none of which helped reduce the fluid in Hilton's elbow.[4] He asserted that he had told McHugh that he previously had surgery for bursitis of the elbow, and argued that the failure to refer him to a specialist caused the elbow to remain swollen and full of fluid.

A magistrate, upon review of the submitted evidence, found that triable issues of fact existed with respect to the treatment of Hilton's herpes and cysts, but not as to the treatment of his elbow.[5] As to the elbow, the magistrate found that the treatment was appropriate and nothing in the record indicated that it should have been treated differently.

Hilton filed objections to the magistrate's report, and argued that summary judgment should not be granted because he recently had undergone surgery to remove fluid from his left elbow, and the defendants had denied him the opportunity to see a specialist regarding his elbow for two years. Included was a document containing "post-operative instructions" and a Florida Department of

---

[4] The magistrate construed this filing as an affidavit because it was made under the penalty of perjury. This opinion, therefore, does the same.

[5] Later hearings resulted in rulings favorable to the defendants as to the herpes and cysts. As stated earlier, Hilton has presented no argument as to that ruling.

Corrections health slip noting that Hilton had an elbow sleeve on his left arm and he should not lift or pull with his left arm.

The district court then adopted the magistrate's report and denied the defendants motion for summary judgment on Hilton's herpes and cyst-related claims, but granted the motion as to treatment of the elbow.

On appeal, Hilton argues that the district court improperly granted summary judgment on his elbow claim because bursitis of the joint was not limited to a specific degree of injury, and his case was an acute case based on a history of bursitis that resulted in corrective surgery by an orthopedic specialist, who removed a golf-ball sized cyst from Hilton's left elbow, developed during the two years that the defendants had failed to remove fluid from the joint.

We review "a district court's grant of summary judgment de novo, viewing the evidence in the light most favorable to the party opposing the motion." Kelley v. Hicks, 400 F.3d 1282, 1284 (11th Cir. 2005) (quotation omitted). Summary judgment is appropriate if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56; Celotex v. Catrett, 477 U.S. 317, 323-24, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986). There is a genuine issue of

material fact only if the nonmoving party has produced evidence such that a reasonable fact-finder could return a verdict in its favor. Waddell v. Valley Forge Dental Assocs., Inc., 276 F.3d 1275, 1279 (11th Cir. 2001).

In order to state a claim for relief under § 1983, "a plaintiff must show that he or she was deprived of a federal right by a person acting under color of state law." Griffin v. City of Opa-Locka, 261 F.3d 1295, 1303 (11th Cir. 2001). Each of the defendants was working for the state; thus, the focus is on whether or the defendants' treatment, or lack thereof, of Hilton's elbow constituted deliberate indifference to a serious medical condition under the Eighth Amendment.

The Eighth Amendment protects prisoners from the infliction of cruel and unusual punishment. U.S. Const. Amend. VIII. In order to establish a violation of the Eighth Amendment, a prisoner must show the alleged violation is objectively sufficiently serious and that prison officials acted with a sufficiently culpable state of mind that rises to the level of deliberate indifference to inmate health or safety. Farmer v. Brennan, 511 U.S. 825, 834, 114 S.Ct. 1970, 1977, 128 L.Ed.2d 811 (1994). "[A] prison official cannot be found liable under the Eighth Amendment for denying an inmate humane conditions of confinement unless the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of

9

serious harm exists, and he must also draw the inference." Id., 511 U.S. at 837, 114 S.Ct. at 1979. However, "an official's failure to alleviate a significant risk that he should have perceived but did not, while no cause for commendation, cannot under our cases be condemned as the infliction of punishment." Id., 511 U.S. at 838, 114 S.Ct. at 1979.

As we have held, to make out a case for denial of medical care in violation of the Eighth Amendment, requires four things: "an objectively serious need, an objectively insufficient response to that need, subjective awareness of facts signaling the need, and an actual inference of required action from those facts." Taylor v. Adams, 221 F.3d 1254, 1258 (11th Cir. 2000). Mere negligence or medical malpractice is insufficient to prove a constitutional violation. Harris v. Thigpen, 941 F.2d 1495, 1505 (11th Cir. 1991). "Nor does a simple difference in medical opinion between the prison's medical staff and the inmate as to the latter's diagnosis or course of treatment support a claim of cruel and unusual punishment." Id.

We conclude that the district court's finding that there was no deliberate indifference was correct. First, as to defendant Goss, he never treated Hilton for his elbow bursitis, and, thus, Goss does not appear to even know about Hilton's complaints regarding his elbow pain. Moreover, to the extent that the medical

10

records would have put Goss on notice, the evidence submitted did not demonstrate that Goss or McHugh had a subjective awareness of facts signaling need or that either one had made the inference required from those facts.

McHugh's affidavit states that, in his medical opinion, he did not think Hilton's elbow required the treatment of a specialist, and indeed, the medical records indicate that McHugh repeatedly prescribed medication for the swelling in Hilton's elbow as well as his knee, and Hilton himself admits that he was prescribed Naprosyn, ibuprofen, and Vioxx,[6] as well as two elbow braces. Hilton's core complaint is that he should have been referred to a specialist, which McHugh believed was not medically necessary. As noted above, that is not deliberate indifference, but a disagreement over a course of treatment, and, therefore, summary judgment was properly granted to both defendants with regard to Hilton's elbow claim. Harris, 941 F.2d at 1505 (holding that a difference of opinion regarding an inmate's course of treatment does not constitute cruel and unusual punishment).

**AFFIRMED.**

---

[6] The Medical Desk Reference lists Naprosyn as non-steroidal anti-inflammatory for treating pain, rheumatoid arthritis, and musculoskeletal and soft-tissue inflammation. Vioxx is listed as an analgesic for treating pain and rheumatoid arthritis.