[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 06-10813
Non-Argument Calendar
_____

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
June 30, 2006
THOMAS K. KAHN
CLERK

D. C. Docket No. 01-00044-CV-5

FREDERICK BROWN,

Plaintiff-Appellee,

versus

GEORGE SMITH, Warden,
in his individual and official capacity,
JIM WETHERINGTON, Commissioner of the Georgia
Department of Corrections, in his individual and
official capacity,
STEVE ROBERTS, Deputy Warden, in his individual
and official capacity,
RANDALL HOLDEN, Deputy Warden of Care and
Treatment,
in his individual and official capacity,
JACK JONES, Chief Counselor, in his individual and
official capacity,
HARRY RONEY, Warden Administrative Assistant,
in his individual and official capacity,
TONY HOWERTON, Warden, in his individual and
official capacity,
PAUL GRIECO,
JAMES L. THRIFT

Defendants-Appellants,

JOHN HEAD,

Defendant.

———————————————

Appeal from the United States District Court
for the Southern District of Georgia

———————————————

**(June 30, 2006)**

Before CARNES, WILSON and PRYOR, Circuit Judges.

PER CURIAM:

Defendants appeal from the district court's January 13, 2006, order denying their second motion for summary judgment, which claimed qualified immunity on Plaintiff Frederick Brown's 42 U.S.C. § 1983 claims.[1] We affirm.

"A district court's denial of summary judgment based on qualified immunity is reviewed *de novo*, construing all facts and making all reasonable inferences in the light most favorable to the non-moving party." *Tinker v. Beasley*, 429 F.3d 1324, 1326 (11th Cir. 2005) (per curiam). "For the purposes of an interlocutory appeal from the denial of qualified immunity, we accept the district court's factual determinations . . . supplementing them where necessary with additional

---

[1] In 2001, Brown, an inmate then located at Ware State Prison, filed suit pro se against Defendants under 42 U.S.C. § 1983, alleging that Defendants had exhibited deliberate indifference to his serious medical needs by continually exposing him to environmental tobacco smoke ("ETS"), which aggravated his preexisting chronic asthma and various other ailments.

evidentiary findings of our own from the record." *Valdes v. Crosby*, 11th Cir.

2006, __ F.3d __, slip op. at 2246 (No. 05-13065, May 31, 2006). The qualified

immunity inquiry is tripartite: "(1) the alleged conduct must fall within the scope

of the discretionary authority of the actor; (2) if it does, we must then determine

whether that conduct violates a constitutional right; (3) if so, we must inquire

whether the asserted right was clearly established at the time of the alleged

violation." *Tinker*, 429 F.3d at 1326.[2]

Here, it is uncontroverted that the actions about which Brown complains

were within the scope of Defendants' discretionary authority. As for the violation

of a constitutional right, we recognized in *Kelley v. Hicks* that "a prisoner can state

a cause of action under the Eighth Amendment for exposure to ETS by 'alleging

that [prison officials] have, with deliberate indifference, exposed him to levels of

---

[2] Brown contends that this appeal is not properly before us because it is not an appeal from a final order, and because we previously vacated a dismissal of Brown's claims on the basis of qualified immunity. *See Brown v. Smith* ("*Brown I*"), 45 Fed. Appx. 885 (11th Cir. 2002) (per curiam) (unpublished table decision). These contentions are without merit. We previously issued an order in this case finding the district court's January 13, 2006, order to be immediately appealable, "because the determination that genuine issues of material fact preclude summary judgment is itself a conclusion of law." *See, e.g.*, *McDaniel v. Woodard*, 886 F.2d 311, 313 (11th Cir. 1989). Likewise, *Brown I* is not necessarily dispositive here because, unlike with a motion to dismiss, on summary judgment "the plaintiff can no longer rest on the pleadings . . . and the court looks to the evidence before it (in the light most favorable to the plaintiff) when conducting the [qualified immunity] inquiry." *Behrens v. Pelletier*, 516 U.S. 299, 309, 116 S. Ct. 834, 840, 133 L. Ed. 2d 773 (1996); *see Oladeinde v. City of Birmingham*, 230 F.3d 1275, 1289 (11th Cir. 2000) ("[B]ecause the complaint did not contain all of the relevant facts that were introduced both at summary judgment and at trial, this court's first opinion affirming the denial of qualified immunity did not establish the law of the case.").

3

ETS that pose an unreasonable risk of serious damage to his future health.'" 400 F.3d 1282, 1284 (11th Cir. 2005) (per curiam) (quoting *Helling v. McKinney*, 509 U.S. 25, 35, 113 S. Ct. 2475, 2481, 125 L. Ed. 2d 22 (1993)). To prove such a claim, the prisoner must establish certain objective and subjective elements. *See id.*; *Helling*, 509 U.S. at 35, 113 S. Ct. at 2481-82. He must show "that he himself is being exposed to unreasonably high levels of ETS" (the objective element) and "that prison authorities demonstrated a 'deliberate indifference' to his plight" (the subjective element). *Hicks*, 400 F.3d at 1284. The district court erred in denying qualified immunity, Defendants argue, because Brown's summary judgment evidence was insufficient to implicate the objective and subjective components of an Eighth Amendment claim for ETS exposure. In other words, Defendants contend that Brown's allegations, when considered in light of the summary judgment evidence, were insufficient to assert a constitutional violation. *See Saucier v. Katz*, 533 U.S. 194, 201, 121 S. Ct. 2151, 2156, 150 L. Ed. 2d 272 (2001) ("If no constitutional right would have been violated were the allegations established, there is no necessity for further inquiries concerning qualified immunity.").

We disagree. The Eighth Amendment violation described in *Helling* and *Hicks* is distinct from the Eighth Amendment violation we described in *Brown I*.

4

Under *Helling*, an Eighth Amendment violation occurs when prison officials, acting with deliberate indifference, expose a prisoner to levels of ETS that pose an unreasonable risk of serious damage to his future health. 509 U.S. at 35, 113 S. Ct. at 2481. The Eighth Amendment violation we described in *Brown I* occurs when state caretakers intentionally fail to follow a physician's prescribed course of treatment for an inmate's serious medical condition. 45 Fed. Appx. 885. Brown, we explained, "alleges that [Defendants] intentionally interfered with his physicians' request that he be housed in an environment free of ETS by continually and intentionally placing him in environments where ETS was common." *Id.* Brown presented summary judgment evidence supportive of these allegations, including: (1) an "Inmate Physical Profile" indicating that he should be not be assigned to any duty "requiring exposure to dust or other allergenic materials[,] including smoke"; (2) a July 20, 1992, medical memorandum recommending that Brown "be placed in a room with a non-smoker, if one is available"; (3) a July 30, 2001, memorandum from the medical department to the deputy warden of care and treatment, stating that one of Brown's limitations is the need for a "Smoke free environment indefinitely"; (4) medical records of Brown's severe asthma problems and treatment; (5) declarations from prisoners identifying themselves as Brown's cellmates and stating that they are smokers; (6) numerous declarations from

5

prisoners stating that Ware State Prison's "no-smoking inside" policy was frequently not enforced; (7) copies of grievance proceedings in which Brown complained that second-hand smoke was aggravating his asthma and making it difficult for him to breathe; (8) responses by prison officials stating that medical officials are aware of Brown's asthma, that Ware State Prison does not allow smoking in any of its buildings, and that Brown has been assigned to a cell with a non-smoker; (9) replies by Brown stating that the no-smoking policy is frequently violated; and (10) letters from Brown to prison officials complaining about occasions when he was forced to room with a "known violator of the no smoking indoor[s] policy," and when another prisoner who smoked was moved into Brown's cell. Although Defendants also produced evidence in their favor, such as declarations about the hundreds of disciplinary actions issued to prisoners for smoking violations, and a statement that Ware State Prison exceeded air quality standards set by the American Correctional Association, we must view the evidence in the light most favorable to Brown, drawing all reasonable inferences in his favor. *See Behrens*, 516 U.S. at 309, 116 S. Ct. at 840. In doing so, we agree with the district court that genuine issues of material fact precluded summary judgment for Defendants on the issue of whether their alleged conduct violated a

constitutional right.[3]  Likewise, the district court properly rejected Defendants'

claim that they were not on notice that their alleged conduct violated Brown's

constitutional rights, for in *Brown I* we described the right at issue as "clearly

established."  45 Fed. Appx. 885; *see, e.g.*, *Young v. City of Augusta, Ga.*, 59 F.3d

1160, 1169 n.17 (11th Cir. 1995) ("The Eighth Amendment prohibits state

caretakers from intentionally delaying medical care or knowingly interfering with

treatment once prescribed.").  Accordingly, denial of Defendants' second motion

for summary judgment on the basis of qualified immunity was proper, and we

affirm the decision of the district court.

     **AFFIRMED.**

---

[3] We do not, however, mean to express any opinion on the ultimate merits of Brown's claim.  *See Mitchell v. Forsyth*, 472 U.S. 511, 527-28, 105 S. Ct. 2806, 2816, 86 L. Ed. 2d 411 (1985) ("[A] claim of immunity is conceptually distinct from the merits of plaintiff's claim that his rights have been violated."); *Marsh v. Butler County, Ala.*, 268 F.3d 1014, 1030 n.8 (11th Cir. 2001) (same).