[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 19-14833
Non-Argument Calendar

_____

D.C. Docket No. 1:19-cv-20743-RNS

WADE D. POUNDS,

Plaintiff - Appellant,

versus

TERESITA DIEGUEZ,
Medical Director, Everglades C.I.,
DR. OSCAR ORTEGA,
Medical Doctor, Everglades C.I.,
JANINE HILLS,
Health Services Director, Everglades C.I.,
SECRETARY, FLORIDA DEPARTMENT OF CORRECTIONS,
ROSALIND AJOKU,
Medical Doctor, Everglades C.I.,

Defendants - Appellees.

_____

Appeal from the United States District Court
for the Southern District of Florida

_____

(April 7, 2021)

Before MARTIN, BRANCH and MARCUS, Circuit Judges.

PER CURIAM:

Plaintiff-Appellant Wade D. Pounds appeals from the district court's sua sponte dismissal with prejudice of his amended 42 U.S.C. § 1983 civil rights complaint alleging that prison doctors at the Everglades Correctional Institution ("ECI") -- Dr. Teresita Dieguez, Dr. Oscar Ortega, and Dr. Rosalind Ajoku -- were deliberately indifferent to his medical needs since he had arrived at the prison. On appeal, Pounds reiterates his claims that the prison doctors were deliberately indifferent to his serious medical needs by cancelling a referral to a specialist, refusing to re-refer him to the specialist, and continuing to treat him with ineffective medication. He also seeks punitive damages. After careful review, we affirm.

We review de novo the sua sponte dismissal of a complaint for failure to state a claim pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii), using the same standards that govern Federal Rule of Civil Procedure 12(b)(6) dismissals. Mitchell v. Farcass, 112 F.3d 1483, 1490 (11th Cir. 1997). To survive a Rule 12(b)(6) motion to dismiss, a complaint must allege sufficient facts to state a claim that is plausible on its face. Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009). A plaintiff must provide more than labels and conclusions to show he is entitled to relief. Id. "[C]onclusory allegations, unwarranted deductions of facts or legal conclusions masquerading as facts will not prevent dismissal." Oxford Asset Mgmt., Ltd. v. Jaharis, 297 F.3d 1182, 1188 (11th

2

Cir. 2002). The "complaint must include factual content that allows the court to draw the reasonable inference that the defendant is liable for the alleged misconduct." Waldman v. Conway, 871 F.3d 1283, 1289 (11th Cir. 2017). The district court may consider exhibits attached to the complaint on a 12(b)(6) motion, because exhibits are part of the pleadings. Fed. R. Civ. P. 10(c); Thaeter v. Palm Beach Cty. Sheriff's Office, 449 F.3d 1342, 1352 n.7 (11th Cir. 2006). While courts construe pro se complaints more liberally than formal pleadings drafted by lawyers, they still must satisfy the basic pleading requirements of applicable law and the Federal Rules of Civil Procedure. See Powell v. Lennon, 914 F.2d 1459, 1463 (11th Cir. 1990); Moon v. Newsome, 863 F.2d 835, 837 (11th Cir. 1989).

A plaintiff bringing a § 1983 civil rights action must "show that he . . . was deprived of a federal right by a person acting under color of state law." Griffin v. City of Opa-Locka, 261 F.3d 1295, 1303 (11th Cir. 2001). Prison officials violate the Eighth Amendment when they act with deliberate indifference to an inmate's serious medical needs, giving rise to a cause of action under § 1983. Estelle v. Gamble, 429 U.S. 97, 104-05 (1976). To prevail on a claim of deliberate indifference, the plaintiff must show: (1) he had an objectively serious medical need; (2) the official was subjectively aware of the serious medical need and acted with deliberate indifference; and (3) causation between that indifference and the plaintiff's injury. Goebert v. Lee Cnty., 510 F.3d 1312, 1326 (11th Cir. 2007).

The seriousness of a medical need is an objective inquiry. Kelley v. Hicks, 400 F.3d 1282, 1284 (11th Cir. 2005) (per curiam). A serious medical need is a medical condition that "has been diagnosed by a physician as mandating treatment," a condition that is "so obvious that even a lay person would easily recognize the necessity," or a condition that is worsened by a delay in treatment. Mann v. Taser Int'l, Inc., 588 F.3d 1291, 1307 (11th Cir. 2009) (quotation omitted). The condition must be one that "poses a substantial risk of serious harm." Id. (quotation omitted).

Whether the defendants acted with deliberate indifference is a subjective inquiry, Kelley, 400 F.3d at 1284, and each defendant is "judged separately and on the basis of what that person knows." Burnette v. Taylor, 533 F.3d 1325, 1331 (11th Cir. 2008). To satisfy this inquiry, the plaintiff must prove: (1) subjective knowledge of a risk of serious harm; (2) disregard of that risk; and (3) by conduct that is more than gross negligence. Harper v. Lawrence Cty., Ala., 592 F.3d 1227, 1234 (11th Cir. 2010); see also Hoffer v. Sec'y, Fla. Dep't of Corr., 973 F.3d 1263, 1270 n.2 (11th Cir. 2020) (noting that "the Supreme Court itself has likened the deliberate-indifference standard to 'subjective recklessness as used in the criminal law,'" and that "no matter how serious the negligence, conduct that can't fairly be characterized as reckless won't meet the Supreme Court's standard") (quoting Farmer v. Brennan, 511 U.S. 825, 839-40 (1994) (emphasis omitted)). He must also show that the defendants' conduct caused his injuries. Harper, 592 F.3d at 1234.

4

A "simple difference in medical opinion" does not constitute deliberate indifference. Waldrop v. Evans, 871 F.2d 1030, 1033 (11th Cir. 1989). Nor does "an official's failure to alleviate a significant risk that he should have perceived but did not." Farmer, 511 U.S. at 838. Further, the question of whether additional diagnostic techniques or treatment methods should have been used "is a classic example of a matter for medical judgment and therefore not an appropriate basis for grounding liability under the Eighth Amendment." Adams v. Poag, 61 F.3d 1537, 1545 (11th Cir. 1995) (quotation omitted); see also Hamm v. DeKalb Cnty., 774 F.2d 1567, 1575 (11th Cir. 1985) (explaining that, where an inmate's health complaints received significant medical care, a mere desire for a different form of treatment does not usually amount to deliberate indifference).

A delay of treatment for an obviously serious medical condition can constitute deliberate indifference when "it is apparent that delay would detrimentally exacerbate the medical problem," and if so, "the delay is medically unjustified." Taylor v. Adams, 221 F.3d 1254, 1259-60 (11th Cir. 2000) (quotation omitted). For a delay in medical treatment to rise to the level of a constitutional violation, a plaintiff "must place verifying medical evidence in the record to establish the detrimental effect of [the] delay." Hill v. DeKalb Reg'l Youth Det. Ctr., 40 F.3d 1176, 1188 (11th Cir. 1994), overruled in part on other grounds by Hope v. Pelzer, 536 U.S. 730 (2002).

Pounds's allegations, gleaned from the amended complaint and its attachments, are these.  See Thaeter, 449 F.3d at 1352 n.7.  Pounds says that he has been hypertensive for the past 20 years and has received medical care and treatment. But since 2015, his condition worsened, and he repeatedly complained to the prison's doctors about his digestion problems, shortness of breath, abdominal pain, and shocks.  During each of Pounds's sicks calls at ECI -- including at least six visits between late 2015 and early 2019 -- ECI's medical staff used the facility's "abdominal pain protocol," which outlines the relevant information the treating physician must gather for abdominal pain along with potential treatment options.

In March 2015, an ultrasound of Pound's abdomen was conducted to address his complaints.   The ultrasound report revealed the gallbladder was "mildly enlarged" and "severely contracted," and diagnosed "focal abdominal aortic ectasia without evidence for aneurysm."  Pounds claims the report also showed that he has a "bulge" in his abdominal aorta, that the walls of the abdominal aorta have lost elasticity,  and that the abdominal "bulge" poses a serious risk to his health.

After submitting a stool sample in December 2015, which tested positive for the presence of blood, Dr. Ortega requested that Pounds be examined by a gastroenterologist.  However, Pounds alleges, Dr. Dieguez subsequently cancelled Dr. Ortega's referral request, and Dr. Ortega declined to submit another referral after his first request was denied or to have the original referral reinstated.

Pounds filed a grievance with the Florida Department of Corrections regarding his ongoing medical issues on July 13, 2018. He acknowledged that the ECI medical staff had prescribed him various medications, some of which on more than one occasion, to help address his medical issues, but said that his discomfort has persisted. Pounds also conceded that Dr. Dieguez had "recently" prescribed a medication for him to take for 60 to 90 days and that he had finished the medicine, but claimed he was "still experiencing some of the same symptoms." In response to his grievance, Dr. Desrosiers, the Medical Director of ECI, relayed that Pounds had recently been seen by ECI medical staff for his complaints of constipation and was currently receiving medication for the issues he mentioned, and that "additional testing [was] being reviewed for referral." Pounds's grievance was denied.

In appealing his grievance, Pounds claimed that, despite taking the medications he has been prescribed, he has endured uncomfortable symptoms for over three years, and that he sought "a more thorough examination." Pounds added that about three years earlier, in 2015 -- around the time his referral was cancelled -- he had a computerized tomography ("CT") scan to assess his condition that showed feces in his large intestine and a lesion on his liver. Since that time, he continued to receive treatment from ECI staff, and in August 2018, the ECI medical staff conducted another ultrasound of Pounds's abdominal area that reported "normal results." Nevertheless, Pounds claimed that he was "still enduring these disturbing

7

systems and the medical staff here has been unable to determine what my problems are, or provide care that would adequately resolve [his] chronic . . . symptoms."

Pounds's appeal of the grievance was denied for the reasons provided in the initial denial. The denial further noted that "[i]t is the responsibility of your health care staff to determine the appropriate treatment regimen for the condition you are experiencing, including specialty consults."

Here, for purposes of the deliberate indifference analysis, we assume that Pounds established that he had a serious medical need based on his ultrasound results revealing a "focal ectasia of the abdominal aorta" and a "severely contracted" gallbladder. See Goebert, 510 F.3d at 1326. Nevertheless, the district court did not err in dismissing Pounds's claims because Pounds did not allege sufficient facts to meet the subjective component for a deliberate indifference claim.

In his complaint, Pounds alleged that Dr. Dieguez was deliberately indifferent to Pounds's medical needs when he cancelled Dr. Ortega's referral, knowing Pounds's medical history spanning over four years, in which Pounds complained of chronic pain, digestive issues, and discomfort in the abdominal area. Similarly, Pounds alleged that Dr. Ortega was deliberately indifferent to his serious medical needs by failing to submit a second referral request or reinstate the initial referral after Dr. Dieguez cancelled it.

8

However, Pounds's allegations merely demonstrate "a classic example of a matter for medical judgment" -- that is, Pounds has alleged that he requested additional diagnostic techniques or forms of treatment that Drs. Dieguez and Ortega had the medical discretion to deny.  See Adams, 61 F.3d at 1545; Hamm, 774 F.3d at 1575.  As the complaint and its attachments reveal, even after the referral was denied, these doctors and the ECI medical staff have continued to treat Pounds, giving him medication for the issues mentioned in his grievance and "recently" trying out other medication.  The relevant materials also indicate that the abdominal pain protocol has been followed in his six or more visits by the ECI medical staff, that he has undergone a CT scan and two ultrasounds, and that additional testing is being considered.  And, notably, Pounds has not alleged that the delay in seeing a specialist has had a detrimental effect on his health.  See Hill, 40 F.3d at 1188.  So while Pounds may disagree with the course of treatment, an allegation of a difference in opinion between Pounds and his doctors without any detrimental effect is insufficient to state a claim of deliberate indifference.  See Hamm, 774 F.2d at 1575.

Indeed, we cannot say, despite Pounds's argument to the contrary, that the actions of Dr. Dieguez or Ortega have amounted to a "complete withdrawal of treatment" similar to those our Court discussed in Brown v. Johnson, 387 F.3d 1344, 1351 (11th Cir. 2004).  There, the defendant suffered from human immunodeficiency virus ("HIV") and hepatitis and a physician within the Georgia

State Prison prescribed medications to treat his illnesses.  See id. at 1346.  About two months later, the defendant was evaluated by a second physician who stopped the medications.  We held that his complaint adequately stated a deliberate indifference claim.  Here, by contrast, Pounds's allegations reflect that he has received repeated and regular treatment for his conditions and is still being evaluated, as needed, to determine what next steps are necessary.  Accordingly, taking the allegations in his pleadings as true, Pounds has not sufficiently alleged that the cancellation of Dr. Ortega's referral has amounted to deliberate indifference.

As for the claim against Dr. Ajoku, Pounds alleged in a conclusory fashion that Dr. Ajoku was deliberately indifferent to Pounds's medical needs by failing to provide treatment for his abdominal condition, chronic pain, and discomfort and by allowing him to suffer from the same medical problems.  However, Pounds's allegations against Dr. Ajoku were no more than "formulaic recitation[s] of the elements of [his] cause of action" -- stating only that Dr. Ajoku "had knowledge of Plaintiff's genuine issues of material facts" and that "Dr. Ajoku acted deliberately indifferent to Plaintiff's needs for medical care . . . . [c]ausing Plaintiff to suffer unnecessary pains and discomfort." These kinds of conclusory allegations do not survive a motion to dismiss.  Oxford Asset Mgmt., 297 F.3d 1182 at 1188.

Finally, Pounds did not sufficiently allege a punitive damages claim against Drs. Dieguez, Ortega, or Ajoku.  Punitive damages may be awarded under § 1983

10

"when the defendant's conduct is shown to be motivated by evil motive or intent, or when it involves reckless or callous indifference to the federally protected rights of others." Smith v. Wade, 461 U.S. 30, 56 (1983). Pounds argues that his claim should be allowed to proceed so he can seek discovery into the defendants' motive and intent. But he has failed to allege sufficient facts to allow him to proceed to that stage. At the very least, Pounds was required to allege that the actions of the defendants were reckless or demonstrated a callous indifference to his well-being. He did not do that. Pounds merely says that his condition, which appears to be chronic, has not been cured. While his allegations make clear that he disagreed with the decisions made by his doctors, this disagreement, without more, does not render their actions reckless or callously indifferent to his federally protected rights. On this record, Pounds has failed to state a punitive damages claim.

**AFFIRMED.**

11