[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 09-10226
Non-Argument Calendar

_____

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
JANUARY 6, 2010
JOHN LEY
ACTING CLERK

D. C. Docket No. 08-00658-CV-5-CLS

SHEILA T. HARPER,
personal representative of the estate
Mitchell Vinson Harper, deceased,

Plaintiff-Appellee,

versus

LAWRENCE COUNTY, ALABAMA,
a county organized and existing under the laws
of the State of Alabama,
LAWRENCE COUNTY COMMISSION,
a governmental entity organized and existing under the laws
of the state of Alabama, et al.,

Defendants,

GENE MITCHELL, an individual,
KENNETH MITCHELL, an individual,
MARY BROWN, an individual,
WILFORD JEROME REED, an individual,
KEVIN BLAKE ROBINSON, an individual,

Defendants-Appellants.

_____

Appeal from the United States District Court
for the Northern District of Alabama
_____

(January 6, 2010)

Before MARCUS, WILSON and FAY, Circuit Judges.

FAY, Circuit Judge:

The court hereby withdraws the opinion issued in the matter on October 7, 2009 and substitutes the following therefore.

This appeal requires us to determine whether the district court properly rescinded its order converting a motion to dismiss into a motion for summary judgment. We must also determine whether the court properly denied Defendants qualified immunity. After reviewing the record and the parties' briefs, we AFFIRM IN PART AND REVERSE IN PART.

## I. FACTS

### A. Background

The following facts are taken from Plaintiff's Complaint. On April 24, 2007 Mitchell Vinson Harper was arrested by Town Creek, Alabama police officer Joe Fike for failing to appear in court on public intoxication charges. Fike transported

Harper to the Lawrence County Jail in Alabama[1] where he was processed and incarcerated by Kevin Blake Robinson, a night-shift jailer. As alleged, Harper did not receive an "appropriate or reasonable" medical examination and/or screening upon admission to the jail.

According to the Complaint Harper was an alcoholic, and while in jail he experienced severe alcohol withdrawal. He displayed symptoms of that affliction, including hallucinations, slurred speech, incoherence, and difficulty walking. Robinson and/or Wilford Jerome Reed, another night-shift jailer, contacted Fike and informed him of Harper's strange behavior. Fike informed one or both of them that he (Fike) would contact Jerry Garrett (Town Creek's police chief) about Harper's behavior, and that the Town Creek Defendants[2] would make a decision regarding Harper's medical care. During a shift change Robinson and/or Reed informed Tim Taylor, a Lawrence County day-shift jailer, of Harper's behavior. Moreover, inmates informed Taylor, Reed and Robinson of Harper's strange behavior, informing them that Harper was saying "crazy things," was "talking off the wall," and was having trouble keeping his balance. Harper did not receive any medical care and died of problems related to alcohol withdrawal in the Lawrence

---

[1] Fike took Harper to Lawrence County's detention facility because the city of Town Creek does not maintain its own.

[2] Plaintiff uses the term "Town Creek Defendants" to refer to Fike, Garrett, and the city of Town Creek.

3

County Jail on April 28, 2007, four days after his arrest.

Plaintiff Sheila T. Harper, the personal representative of Harper's estate, filed a two-count Complaint on April 14, 2008 against the following Defendants: Lawrence County, the Lawrence County Commission, Lawrence County Sheriff Gene Mitchell, jail administrator Kenneth Mitchell, jail administrator Mary Brown, Taylor, Reed, Robinson, the City of Town Creek, Garrett, and Fike. See D.E. #1. In Count I Plaintiff sued all Defendants under 42 U.S.C. § 1983 for deliberate indifference to Harper's serious medical needs, as prohibited by the Fourteenth and Eighth Amendments.[3] In Count II Plaintiff sued all Defendants for negligence and wantonness under Alabama state law for failing to provide medical treatment.[4]

## B.    Procedure

On May 6, 2008 Defendants Gene Mitchell, Kenneth Mitchell, Brown, Reed, and Robinson filed a motion to dismiss the Complaint under Federal Rule of

---

[3] Plaintiff conceded that her section 1983 claims may only be brought under the Fourteenth Amendment, as Harper was a pretrial detainee and not a prisoner. See D.Es. #36, 37; see also, e.g., Andujar v. Rodriguez, 486 F.3d 1199, 1203 n.3 (11th Cir. 2007) ("Claims of deliberate indifference to the serious medical needs of pretrial detainees are governed by the Fourteenth Amendment's Due Process Clause rather than by the Eighth Amendment's Cruel and Unusual Punishment Clause, which governs similar claims by convicted prisoners.").

[4] Plaintiff voluntarily dismissed a number of her claims: her section 1983 claims against Kenneth Mitchell, Brown, Reed, and Robinson in their official capacities, and her state law claims against Gene Mitchell, Kenneth Mitchell, Brown, Reed, and Robinson.

Civil Procedure 12(b)(6) with attached exhibits.[5]  See D.Es. #27-28.  In their motion Defendants asserted the defense of qualified immunity to the section 1983 claims against them in their individual capacities.[6]  See id.  Plaintiff filed an opposition with her own attached exhibits.  See D.E. #36. Defendants filed a motion to strike Plaintiff's response or, in the alternative, to convert their Rule 12(b)(6) motion to a motion for summary judgment under Rule 56.  See D.E. #42.

The district court granted the alternative requested relief and converted the motion to dismiss to a motion for summary judgment.  See D.E. #44.  The court later rescinded that order, finding that "the current body of evidence simply is insufficient to support a ruling on a motion for summary judgment."  See D.E. #66. Analyzing the motion as a motion to dismiss, the court denied qualified immunity on the section 1983 claims against Gene Mitchell, Kenneth Mitchell, Brown, Reed, and Robinson.  See id.  Those Defendants appeal both rulings here - the court's decision to rescind its order converting their motion to dismiss into a motion for

_____

[5] Tim Taylor filed a separate motion to dismiss the claims against him.  See D.E. #49. That motion is not at issue in this appeal.

[6] Under the doctrine of qualified immunity, "government officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known."  Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982).  "The purpose of qualified immunity is to allow government officials to carry out their discretionary duties without the fear of personal liability or harassing litigation."  McClish v. Nugent, 483 F.3d 1231, 1237 (11th Cir. 2007) (internal quotation omitted).  There is no question here that Defendants were performing discretionary functions during their alleged unlawful conduct.

summary judgment, and the denial of their qualified immunity. We address each issue in turn.[7]

## II. DISCUSSION

### A. Conversion of Motion for Summary Judgment Back into Motion to Dismiss

Defendants claim that the district court erred in rescinding its order converting their motion to dismiss to a summary judgment motion. We disagree. It is permissible for a district court to rescind its own interlocutory order. See, e.g., Toole v. Baxter Healthcare Corp., 235 F.3d 1307, 1315 (11th Cir. 2000) ("In this case, the court's order for a new trial was an interlocutory order, and therefore the trial court had the power to revoke it and reinstate the judgment."); Hardin v. Hayes, 52 F.3d 934, 938 (11th Cir. 1995) (district court may reconsider and amend interlocutory orders at any time before final judgment).

We review a district court's reversal of its own interlocutory order for abuse of discretion. See, e.g., Lanier Const., Inc. v. Carbone Props. of Mobile, LLC, 253 Fed. Appx. 861, 863 (11th Cir. 2007) ("[T]the district court's denial of [the plaintiff's] motion for leave to amend the complaint was simply an interlocutory decision . . . which the district court had ample discretion to reconsider."); Sanchez

_____

[7] The only claims at issue in this appeal are the claims against the individuals in their personal capacities, claims against which those Defendants asserted qualified immunity. See D.E. #70, Notice of Appeal ("The basis of this appeal is the denial of qualified immunity.").

6

v. Triple-S Mgmt, Corp., 492 F.3d 1, 12 n.12 (1st Cir. 2007) ("[A]bsent a particularly egregious abuse of discretion, district courts are free to reconsider their interlocutory orders.") (internal quotation omitted).

We find that the district court did not abuse its discretion in rescinding its order converting Defendants' motion to dismiss to a summary judgment motion. The court made clear when it did so that discovery was stayed, and that it did not consider any evidence outside the pleadings when ruling on the motion as a motion to dismiss. Further, the parties are not precluded from filing a summary judgment motion in the future.

Defendants argue that it was not enough for the court to have declined to consider the outside documents in ruling on the motion to dismiss - rather, it should have *excluded* them pursuant to Rule 12(d).[8] This argument has no merit. A judge need not convert a motion to dismiss into a motion for summary judgment as long as he or she does not consider matters outside the pleadings. According to case law, "not considering" such matters is the functional equivalent of "excluding" them - there is no more formal step required. See, e.g., Jones v. Auto. Ins. Co. of Hartford, Conn., 917 F.2d 1528, 1532 (11th Cir. 1990) ("[I]f the judge

_____

[8] Rule 12(d) provides, in pertinent part: "If, on a motion under Rule 12(b)(6) or 12(c), matters outside the pleadings are presented to and not excluded by the court, the motion must be treated as one for summary judgment under Rule 56."

does *consider* . . . outside matters, i.e., if the judge does not *exclude* them, Rule 12(b) requires the judge to comply with the requirements of Rule 56.") (emphases added); see also, e.g., Austin v. Modern Woodman of Am., 275 Fed. Appx. 925, 926 (11th Cir. 2008) ("[W]e discern no reversible error [in the district court's refusal to construe the defendants' motions to dismiss as motions for summary judgment]. Although the parties' motions had affidavits, the record demonstrates that the district court did not consider matters outside the pleadings."); Ware v. Assoc. Milk Producers, Inc., 614 F.2d 413, 414 (5th Cir. 1980) ("Although Rule 12(b) provides that a 12(b)(6) motion shall be treated as one for summary judgment when matters outside the record are presented to the court and not excluded, in the instant case the express wording of the Order of Dismissal affirmatively indicates that the district court did not consider the extra-pleading matters.").[9]

In sum, we find that the district court properly exercised its discretion to reconsider and rescind its order converting Defendants' motion to dismiss into a summary judgment motion.

## B. Denial of Qualified Immunity

The court analyzed Plaintiff's section 1983 claims for deliberate indifference

---

[9] Under Bonner v. City of Pritchard, 661 F.2d 1206, 1209 (11th Cir. 1981) (en banc), we are bound by cases decided by the former Fifth Circuit before October 1, 1981.

to serious medical needs and determined that they were not subject to dismissal under Rule 12(b)(6) based on qualified immunity. With one exception, we agree.[10]

Rule 8(a)(2) requires only "a short and plain statement of the claim showing that the pleader is entitled to relief." The Supreme Court has clarified that to satisfy Rule 8, "[f]actual allegations must be enough to raise a right to relief above the speculative level." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007). The plaintiff must allege "enough facts to state a claim to relief that is plausible on its face," to "nudge[] [the] claims across the line from conceivable to plausible." Id. at 570.

However, this Circuit has tightened the application of Rule 8 in section 1983 cases where qualified immunity is at issue, like this one. In such cases, the "heightened pleading standard" applies and "[s]ome factual detail in the pleadings is necessary." GJR Invs., Inc. v. County of Escambia, Fla., 132 F.3d 1359, 1367 (11th Cir. 1998); see also Danley v. Allen, 540 F.3d 1298, 1314 (11th Cir. 2008) ("Under the heightened pleading requirement, the relevant facts must be alleged with some specificity.") (internal quotation omitted). The purpose of the

---

[10] "We review de novo a trial court's denial of a motion to dismiss a complaint on qualified immunity grounds." Long v. Slaton, 508 F.3d 576, 579 (11th Cir. 2007). "In reviewing a complaint, we accept all well-pleaded factual allegations as true and construe the facts in the light most favorable to the plaintiff." Cottone v. Jenne, 326 F.3d 1352, 1357 (11th Cir. 2003).

9

heightened pleading standard is for the plaintiff to provide facts with "sufficient detail for Defendants to understand what alleged rights were violated . . . and which of their actions allegedly violated those rights," as well as "for the court to determine whether those facts indeed set out a violation of rights and whether those rights were clearly established when these incidents occurred." Amnesty Int'l, USA v. Battle, 559 F.3d 1170, 1180 (11th Cir. 2009).

Here, Plaintiff brought claims for deliberate indifference to serious medical needs against individual Defendants. Specifically, she brought two different types of deliberate indifference claims: those for "personal participation" against Gene Mitchell, Kenneth Mitchell, Brown, Reed, and Robinson; and those for "supervisory liability" against Gene Mitchell, Kenneth Mitchell, and Brown.[11]

Below, we analyze both types of claims to see if the district court correctly denied Defendants qualified immunity.

### 1. *"Personal Participation" Claims*

As stated above, Gene Mitchell, Kenneth Mitchell, Brown, Reed, and Robinson all asserted qualified immunity as a defense to the "personal participation" section 1983 claims against them. This Circuit generally follows a two-step analysis to determine if qualified immunity applies to any section 1983

---

[11] Plaintiff made clear which claims she brought against which Defendants in her response to their motion to dismiss. See D.E. #36 at 11-21.

claim. The first step is to determine "whether the [defendant's] conduct amounted to a constitutional violation," and the second step is to "analyze[] whether the right violated was 'clearly established' at the time of the violation." Lewis v. City of West Palm Beach, Fla., 561 F.3d 1288, 1291 (11th Cir. 2009). "Whether a constitutional right was 'clearly established' at the time of the violation turns on whether it would be clear to a reasonable [defendant] that his conduct was unlawful in the situation he confronted." Gray ex rel. Alexander v. Bostic, 458 F.3d 1295, 1306 (11th Cir. 2006) (internal quotation omitted). "We recognize three sources of law that would put a government official on notice of statutory or constitutional rights: specific statutory or constitutional provisions; principles of law enunciated in relevant decisions; and factually similar cases already decided by state and federal courts in the relevant jurisdiction." Goebert v. Lee County, 510 F.3d 1312, 1330 (11th Cir. 2007).

a.    *Violation of constitutional rights?*

To perform the first step of the qualified immunity analysis, we must determine whether Plaintiff properly stated a "personal participation" claim for deliberate indifference under the Fourteenth Amendment against Gene Mitchell, Kenneth Mitchell, Brown, Reed, and Robinson. Specifically, Plaintiff must sufficiently allege "both an objectively serious medical need and that a Defendant

11

acted with deliberate indifference to that need." Burnette v. Taylor, 533 F.3d 1325, 1330 (11th Cir. 2008).[12]  To establish "deliberate indifference," Plaintiff must demonstrate that Defendants (1) had subjective knowledge of a risk of serious harm; (2) disregarded that risk; and (3) acted with more than gross negligence. Id. She must also show that those Defendants' conduct caused Harper's injuries. See Marsh v. Butler County, Ala., 268 F.3d 1014, 1028 (11th Cir. 2001).

With respect to the "subjective knowledge" component, we have stated that defendants "must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and [ ] must also draw the inference.'" Bozeman v. Orum, 422 F.3d 1265, 1272 (11th Cir. 2005) (internal quotation omitted).  "[I]mputed or collective knowledge cannot serve as the basis for a claim of deliberate indifference.  Each individual Defendant must be judged separately and on the basis of what that person knows." Burnette, 533 F.3d at 1331.

Here, there are two main ways Plaintiff alleges Defendants knew of Harper's serious medical needs.  First, Plaintiff claims that they "had full knowledge that Harper was an alcoholic who would experience delirium tremens (DT's) due to alcohol withdrawal if left untreated," because he had been arrested before and placed in the Lawrence County Jail on various alcohol-related charges.  Compl. at

---

[12]  Defendants conceded that Harper suffered a serious medical condition.

8.  She also alleges that during the course of one or more of his prior arrests Harper "informed the defendants that he had a history of seizures due to alcohol withdrawal." Id. at 9. However, these allegations do not meet the Rule 8 standard, much less the heightened pleading standard. Plaintiff did not offer any facts to suggest why *these* Defendants in particular (a sheriff, two jail administrators, and two jailers) would know of Harper's specific medical history, nor did she offer any specific facts regarding Harper's past arrests. Moreover, even if those Defendants did know of Harper's history of alcoholism and/or past alcohol-related arrests, they would still have needed to know that Harper was in serious need of medical attention during the time period in question, April 24, 2007 to April 28, 2007. In our view, Plaintiff does not "raise [her] right to relief above the speculative level" in this instance. Twombly, 550 U.S. at 555.

Second, Plaintiff claims Defendants were aware of Harper's condition because of his symptoms and behavior at the jail. Specifically, Plaintiff alleges that several days after his initial incarceration Harper was hallucinating, slurring his words, physically weak, and incoherent. According to the Complaint, Reed and/or Robinson told both Taylor and Fike that Harper was displaying erratic and strange behavior. Compl. at 7-8. The Complaint also alleges that other inmates informed Reed and Robinson that Harper was acting strangely, losing his balance,

13

and had urinated on himself. Id. at 9. Based on these allegations we hold that Plaintiff adequately alleged Reed and Robinson had "actual knowledge" of the risk of serious harm to Harper if left untreated. However, the Complaint does not allege how the other three Defendants, Sheriff Gene Mitchell and administrators Kenneth Mitchell and Brown, could possibly have had such actual knowledge. Thus, the court should have dismissed the "personal participation" claims as to those three Defendants based on qualified immunity, and we reverse the district court's order in that respect.

As explained above, Plaintiff must also sufficiently allege that Reed and Robinson disregarded the risk of serious harm to Harper with conduct that was more than negligent. "[O]fficials, to be liable [for deliberate indifference], must be aware of a substantial risk of serious harm to the inmates and not take reasonable measures to alleviate that risk." Marsh, 268 F.3d at 1027. "Deliberate indifference" can include "the delay of treatment for obviously serious conditions where it is apparent that delay would detrimentally exacerbate the medical problem, the delay does seriously exacerbate the medical problem, and the delay is medically unjustified." Taylor v. Adams, 221 F.3d 1254, 1259-60 (11th Cir. 2000) (internal quotation omitted).

Here, Plaintiff alleges that Reed and/or Robinson called Fike regarding

14

Harper's strange behavior. Fike allegedly told one or both of them that he (Fike) would contact Garrett about Harper's behavior, and that the Town Creek Defendants would make a decision regarding Harper's medical care. Plaintiff also alleges that Reed and/or Robinson told Taylor about Harper's behavior at the shift change. However, despite their awareness of Harper's condition, neither Reed or Robinson took any steps to actually secure immediate medical attention for Harper, whose need for prompt treatment appeared dire. Thus, Plaintiff adequately alleged that Reed and Robinson violated Harper's Fourteenth Amendment rights.

  *b.  Were Harper's rights clearly established at the time?*

In order to clear the qualified immunity hurdle for Reed and Robinson, Plaintiff must also show that Harper's rights under the Fourteenth Amendment were "clearly established" at the time they were allegedly violated. We find that Plaintiff can clear this hurdle. This Circuit has stated that its prior cases "established that a jail official who is aware of but ignores the dangers of acute alcohol withdrawal and waits for a manifest emergency before obtaining medical care is deliberately indifferent to the inmate's constitutional rights." Lancaster v. Monroe County, Ala., 116 F.3d 1419, 1426 (11th Cir. 1997); see also id. ("Morrison clearly established that sheriffs and jailers cannot place or keep a chronic alcoholic in jail without any medical supervision, when the defendants are

aware that the alcoholic is suffering from a severe form of alcohol withdrawal.")

(citing Morrison v. Washington County, 700 F.2d 678 (11th Cir. 1983)).

Thus, Plaintiff properly stated "personal participation" section 1983 claims

for deliberate indifference against Reed and Robinson, and the district court was

right to deny those Defendants qualified immunity.  We therefore affirm the

district court in that respect.

### 2. *"Supervisory Liability" Claims*

Plaintiff also sues Gene Mitchell, Kenneth Mitchell, and Brown for

deliberate indifference in their capacity as supervisors.  Because those Defendants

asserted qualified immunity to the "supervisory liability" claims against them, we

must again perform the qualified immunity analysis.  That is, we must analyze

whether Plaintiff properly stated a violation of Harper's Fourteenth Amendment

rights against those Defendants, and whether those rights were clearly established

at the time.

### a. *Violation of constitutional right?*

Supervisory liability lies where the defendant personally participates in the

unconstitutional conduct or there is a causal connection between such conduct and

the defendant's actions.  There are three ways to establish such a causal

connection:

when a history of widespread abuse puts the responsible supervisor on notice of the need to correct the alleged deprivation, and he fails to do so. Alternatively, the causal connection may be established when a supervisor's custom or policy . . . result[s] in deliberate indifference to constitutional rights or when facts support an inference that the supervisor directed the subordinates to act unlawfully or knew that the subordinates would act unlawfully and failed to stop them from doing so.

Cottone, 326 F.3d at 1360-61 (internal quotations omitted).[13]

Here, because there are no allegations in the Complaint regarding the supervisors' personal participation in the denial of Harper's Fourteenth Amendment rights, we look to whether Plaintiff has alleged a "causal connection." Although Plaintiff does mention "widespread" constitutional rights deprivations (see Compl. at 16), it seems that the bulk of her facts against Gene Mitchell, Kenneth Mitchell, and Brown allege "causal connection" based on their customs or policies that resulted in harm to Harper. Specifically, Plaintiff alleges that those Defendants, who were responsible for the management and administration or oversight of the jail, had customs or policies of improperly screening inmates for alcohol withdrawal, improperly handling inmates addicted to alcohol or drugs, delaying medical treatment and restricting access to outside medical providers in

---

[13] "The deprivations that constitute widespread abuse sufficient to notify the supervising official must be obvious, flagrant, rampant and of continued duration, rather than isolated occurrences." Hartley v. Parnell, 193 F.3d 1263, 1269 (11th Cir. 1999) (internal quotation omitted).

17

order to save money, primarily using emergency medical treatment for physical injuries only, and also failing to train jailers in identifying inmates with alcohol dependency.

As factual support, the Complaint refers to an incident with Clyde O'Neal Parker, who was also a pretrial detainee in the Lawrence County Jail. The Parker incident is strikingly similar to this case - and occurred only one month before the Harper incident. According to that complaint, Parker was taken into custody on a DUI charge and did not receive a proper medical screening, which would have revealed his alcoholism and potential for suffering from withdrawal. The complaint states that Parker did in fact experience alcohol withdrawal but was not treated at the jail - even though Parker's wife informed jail personnel that Parker was an alcoholic and would need emergency treatment. The complaint states that a jailer informed Parker's daughter that Parker would not receive medical care because he was not "bleeding." Parker was eventually released to family members so that they could take him to a hospital for medical treatment. Parker ended up suffering brain damage. The Parker complaint contains similar allegations against the same three supervisory Defendants as the Harper Complaint - that they maintained a custom or policy of improper medical screening, of burden-shifting medical treatment onto other entities out of financial concerns and "denying or

18

delaying treatment for serious health conditions to save money." Parker Compl. at 8. The Parker complaint also sues jailers Reed and Robinson.

In sum, given the Complaint's factual detail about Harper's incident and the similar incident involving Parker just one month before, as well as the specific allegations regarding the customs or policies put in place by the supervisors, Plaintiff met both the Rule 8 and heightened pleading standards.[14] Accordingly, we hold that Plaintiff sufficiently alleged that the supervisory Defendants violated Harper's Fourteenth Amendment rights based on their customs or policies.

> b. *Were Harper's rights clearly established at the time?*

Gene Mitchell, Kenneth Mitchell, and Brown claim they are entitled to qualified immunity on the "supervisory liability" claims because, even if Plaintiff properly alleged they violated Harper's Fourteenth Amendment rights, it was not "clearly established" at the time that their alleged actions would be unlawful. This is because, they argue, no factually similar case could have put them on notice of the unlawfulness of their conduct.

Plaintiff does not point to any such factually similar case, and we were unable to find one. However, as we explained above, the existence of a factually

---

[14] Plaintiff also offered allegations regarding the other two ways to establish a "causal connection" - namely, the supervisors' failure to train and the existence of "widespread abuse." Although we do not address those allegations substantively, we believe they satisfy the Rule 8 and heightened pleading standards as well.

19

similar case is not the only way to put officials on notice of the unlawfulness of their conduct. Indeed, "[a] government official can be put on notice that his actions will violate a constitutional or statutory right by . . . a legal principle announced by a decision from a court with jurisdiction over the place where the violation of rights was committed." Danley, 540 F.3d at 1313. In our view, our prior pronouncements on the illegality of delayed or inadequate treatment for alcohol withdrawal should have sufficed to put the supervisory Defendants on notice. Specifically, the Lancaster and Morrison cases (see supra p. 15) should have put any government actor on notice that delayed or inadequate treatment of alcohol withdrawal would be unlawful. Those cases should also have put supervisors on notice that policies or customs of delayed investigation into and treatment of alcohol withdrawal would be unlawful as well. Thus, we affirm the district court's denial of Gene Mitchell, Kenneth Mitchell, and Brown's qualified immunity defense to Plaintiff's "supervisory liability" claims against them.

### III.    CONCLUSION

For the foregoing reasons, we affirm the district court in all respects but one: we reverse the court's denial of qualified immunity to Gene Mitchell, Kenneth Mitchell, and Brown on the "personal participation" section 1983 claims. Accordingly, the order of the district court denying Defendants qualified immunity

is

**AFFIRMED IN PART, REVERSED IN PART**.