[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 11-15036
Non-Argument Calendar

_____

D.C. Docket No. 1:10-cv-00133-WLS-TQL


PAUL G. BETTENCOURT,

Plaintiff-Appellant,

versus


BRIAN OWENS, et al.,

Defendants-Appellees.


_____

Appeal from the United States District Court
for the Middle District of Georgia

_____

(October 2, 2013)

Before WILSON, JORDAN, and ANDERSON, Circuit Judges.

PER CURIAM:

Paul Bettencourt, an inmate at a state prison in Autry, Georgia, filed a *pro se*

42 U.S.C. § 1983 complaint against various officials of the Georgia Department of

Corrections who work at the prison. After the district court dismissed his complaint for not exhausting his administrative remedies and for failing to state a claim under § 1983, Mr. Bettencourt filed this timely appeal. Upon review of the record and the parties' briefs, we affirm the district court's decision in part, and vacate and remand in part.

## I.

Mr. Bettencourt alleged the following facts in his *pro se* complaint.

On August 1, 2009, he wrote a letter to Chief Counselor Benjie Nobles explaining that he was being "sexually harassed" and needed to be placed in protective custody or moved to a different building. A few days later, he wrote to Deputy Warden of Security Marty Allen and sent a second letter to Mr. Nobles, again explaining that he was being "sexually harassed" and that he needed to be placed in protective custody or transferred.[1] Mr. Bettencourt then wrote to mental health counselor Kim Cleveland asking her "to talk to the chief counselor Mr. Nobles" about his concerns. On August 18, 2009, Mr. Bettencourt sent another round of letters to Mr. Allen and Mr. Nobles complaining of "sexual harassment." He also sent letters to Brian Owens, the Commissioner of the Georgia Department of Corrections, as well as to "internal affairs."

---

[1] Mr. Bettencourt never elaborated on the nature of the harassment in his complaint, merely stating he informed prison officials he was being sexually harassed.

2

On that same day -August 18, 2009- Mr. Bettencourt filed an informal grievance about his sexual harassment and denial of protective custody, which was reviewed by Hank Autry. Though he was able to speak briefly with Mr. Autry, Mr. Bettencourt was never granted protective custody. Mr. Bettencourt also attempted to, unsuccessfully, obtain protective custody from Lieutenants Willether Brown, Towanda Zachary, and Eric Alls.

Mr. Bettencourt claimed he then attempted to speak with Captain Nathaniel Williams about his concerns, but never had an opportunity to explain that he was being sexually harassed and needed protection. He was directed to air his grievances to a sergeant or a lieutenant, which prompted Mr. Bettencourt to speak with Sargent Michael Wade. But he again was unable to explain that he was being sexually harassed and needed protective custody.

On September 7, 2009, Mr. Bettencourt alleged he was standing in his cell with his back to the door. He heard someone enter, but assuming it was his roommate, decided not to look. The individual quickly grabbed Mr. Bettencourt and began choking him from behind. The attacker then threw him off balance, and smashed his head into a hard object. Mr. Bettencourt was knocked unconscious. Upon regaining consciousness he realized someone "was performing anal sex" on him, and attempted to resist the sexual assault. He was again choked into unconsciousness, and awoke sometime later, alone, lying on the floor of his cell.

3

Based on these allegations, Mr. Bettencourt alleged in his *pro se* complaint that Defendants Alls, Brown, Wade, Williams, Zachary, Allen, Owens, Cleveland, Nobles, and Autry violated 42 U.S.C. § 1983. He asserted that their failure to grant him protective custody or a transfer led to his violent rape, and that they should therefore be held liable for his injuries.

On September 30, 2011, the district court, adopting in part the magistrate judge's report, granted the defendants' motions to dismiss and dismissed Mr. Bettencourt's complaint with prejudice.[2] The court concluded that Mr. Bettencourt did not exhaust his administrative remedies for his claim against Ms. Cleveland, and that he failed to state a claim under § 1983 against the remaining named prison officials. Mr. Bettencourt filed this timely appeal. He argues that he exhausted his administrative remedies and that his *pro se* complaint properly stated claims under § 1983, but that even if his complaint was deficient, he should have been afforded an opportunity to amend his complaint prior to the court dismissing it with prejudice.

## II.

We review *de novo* the district court's grant of a Federal Rule of Civil Procedure 12(b)(6) motion to dismiss for failure to state a claim. *Butler v. Sheriff*

---

[2] Most of the defendants filed a joint motion to dismiss, with the exception of Ms. Cleveland, who filed her own motion.

*of Palm Beach Cnty.*, 685 F.3d 1261, 1265 (11th Cir. 2012). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Igbal*, 556 U.S. 662, 678 (2009) (citation and quotation marks omitted). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citation omitted). In applying this standard, "our consideration is limited to those facts contained in the pleadings and attached exhibits." *Griffin Indus., Inc. v. Irvin*, 496 F.3d 1189, 1199 (11th Cir. 2007) (citation omitted).

### III.

Upon review, we affirm the district court's decision in part, and vacate and remand in part. The district court correctly concluded Mr. Bettencourt's claim against Ms. Cleveland was not exhausted, and that his *pro se* complaint failed to state a claim under § 1983 against the remaining named prison officials. The district court nevertheless erred by not giving Mr. Bettencourt an opportunity to amend his *pro se* complaint prior to dismissing it with prejudice.

### A.

We turn first to Mr. Bettencourt's argument that his § 1983 claim against Ms. Cleveland was exhausted. The Prison Litigation Reform Act ("PLRA") provides in relevant part: "No action shall be brought with respect to prison

conditions under section 1983 . . . by a prisoner . . . until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). The Supreme Court has explained that even "when the prisoner seeks relief not available in grievance proceedings, notably money damages, exhaustion is a prerequisite to suit;" the exhaustion requirement applies "to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." *Porter v. Nussle*, 534 U.S. 516, 524-32 (2002) (citations omitted). This exhaustion requirement "seeks to eliminate unwarranted interference with the administration of prisons in order to 'afford corrections officials time and opportunity to address complaints internally before allowing the initiation of a federal case.'" *Parzyck v. Prison Health Serv., Inc.*, 627 F.3d 1215, 1217 (11th Cir. 2010) (citation omitted).

Mr. Bettencourt was therefore required to exhaust his claim against Ms. Cleveland through the administrative process outlined in the Georgia Department of Corrections' Standard Operating Procedure IIB05-0001 ("SOP"). *See Parzyck*, 627 F.3d at 1217 ("Compliance with prison grievance procedures . . . is all that is required by the PLRA to 'properly exhaust'") (citation omitted). The governing SOP at Mr. Bettencourt's facility required him to (1) file an informal grievance, (2) file a formal grievance, and (3) appeal any denial of his formal grievance. Upon the filing of a formal grievance, the SOP gives the warden thirty days to provide a

6

written response stating whether the grievance is granted or denied. The warden's denial of a formal grievance is appealable, as is the warden's failure to grant or deny a formal grievance within that thirty-day time period.

Mr. Bettencourt argues that because the warden never granted or denied his formal grievance he was not required to file an appeal to exhaust his claim. This argument is squarely foreclosed by our reasoning in *Turner v. Burnside*, 541 F.3d 1077 (11th Cir. 2008). In *Turner*, we were tasked with the question of whether an inmate exhausted his administrative remedies under a Georgia state prison's SOP that is in all relevant respects the same as the one at issue here. *Id*. at 1080-85. Like Mr. Bettencourt, the prisoner had argued that the warden's failure to provide a written response to his formal grievance obviated his obligation to file an appeal. We concluded:

> Turner never received a written response to his formal grievance. Once the thirty-day time limit for a response had passed, he was required to appeal within five calendar days. He admits that he failed to file an appeal. As a result, if the appeal remedy was available to Turner, he should have pursued it and his failure to do so would bar his lawsuit under the PLRA's exhaustion requirement.

*Id*. at 1084. The reasoning of *Turner* shows Mr. Bettencourt failed to exhaust his administrative remedies. Despite Mr. Bettencourt's protestations to the contrary, when the warden failed to respond to the formal grievance within the allotted thirty-day period Mr. Bettencourt was required to pursue an appeal in order to exhaust his claim. Because Mr. Bettencourt concedes that he failed to pursue this

7

avenue, the district court properly dismissed his unexhausted § 1983 claim against Ms. Cleveland.[3]

## B.

We also affirm the district court's ruling that allegations in Mr. Bettencourt's *pro se* complaint failed to state a claim under § 1983. An inmate like Mr. Bettencourt may sue a prison official under § 1983 for being deliberately indifferent to a known, substantial risk that the inmate would be seriously harmed. *See Goodman v. Kimbrough*, 718 F.3d 1325, 1332 (11th Cir. 2013). To prevail on such a claim, the inmate must show "(1) subjective knowledge of a risk of serious harm; (2) disregard of that risk; (3) by conduct that is more than gross negligence." *Id*. (citation and quotation marks omitted). A prison official has the requisite subjective knowledge only when he is aware of facts from which he can draw the inference that an inmate faces a substantial risk of serious harm, and actually draws the inference. *See Harper v. Lawrence Cnty., Ala.*, 592 F.3d 1227, 1234 (11th Cir. 2010). Accordingly, though prison officials have a duty to protect inmates "from violence at the hands of other prisoners," not every injury translates into liability for prison officials responsible for inmate safety. *See Farmer v. Brennan*, 511 U.S. 825, 837 (1994) (citation omitted).

---

[3] We note in passing that this Court has expressed a district court may dismiss an inmate's claim with prejudice for failure to exhaust administrative remedies. *See Bryant v. Rich*, 530 F.3d 1368, 1375 n.11 (11th Cir. 2008)

Applying this framework, the district court correctly concluded that Mr. Bettencourt failed to allege that the defendant prison officials had the requisite subjective knowledge required to impose liability under § 1983. The court reasoned that the complaints of sexual harassment did not convey to the prison officials that Mr. Bettencourt faced a substantial risk of serious harm:

> With no further description or detail as to whether the sexual harassment, for example, involved physical touching or physical threats, a strong, specific likelihood of an attack could not have arisen in Defendants' subjective conscience where Plaintiff only reported the occurrence of sexual harassment . . . [B]ased on the inexplicit nature of Plaintiff's allegations, the sexual harassment from which Plaintiff allegedly suffered could have merely constituted inappropriate verbal advances, verbal taunts, or uncomfortable sexual compliments, with no insinuation of violence. Sexual harassment in this form does not rise to the level of a substantial risk of harm . . .

D.E. 77 at 9. We agree.

Mr. Bettencourt, a layman unfamiliar with the law, only alleged in his *pro se* complaint that he informed prison officials that he needed protections from "sexual harassment." Without more, his complaints could have merely been about "obscene remarks"[4] or "uninvited and unwelcome verbal . . . behavior of a sexual nature,"[5] neither of which indicate that Mr. Bettencourt faced a substantial risk of serious harm. Mr. Bettencourt's allegations therefore undoubtedly failed to state a claim under § 1983. Indeed, we have rejected deliberate indifference claims where

---

[4] *See* "sexual harassment." *Merriam-Webster Collegiate Dictionary* (11th ed. 2012).

[5] *See* "sexual harassment." *Oxford English Dictionary*, Volume 2 (4th ed. 1993).

the allegations were much more severe than those presented in his *pro se* complaint. *See, e.g.*, *Carter v. Galloway*, 352 F.3d 1346, 1349-50 (11th Cir. 2003) (concluding inmate's allegations that he informed prison officials that his roommate was acting crazy, wanted to fake a hanging, and made a statement that plaintiff would help in the fake hanging "one way or another" were insufficient to show prison officials were subjectively aware of risk of harm from the roommate).[6]

## C.

The district court nevertheless erred by dismissing Mr. Bettencourt's *pro se* complaint with prejudice without affording him an opportunity to amend. It is a well-established rule in the Eleventh Circuit that where a more carefully drafted *pro se* complaint might state a claim the "plaintiff must be given at least one chance to amend the complaint before the district court dismisses the action with prejudice." *Bank v. Pitt*, 928 F.2d 1108, 1112 (11th Cir. 1991).[7] A court must therefore afford a plaintiff an opportunity to amend his *pro se* complaint before dismissing with prejudice unless an amendment would be futile or the plaintiff expresses a desire not to amend. *Id*. at 1112.

---

[6] To that end, Mr. Bettencourt's claim of supervisory liability against Mr. Owens also failed because it was based on the same insufficient allegations.

[7] This rule does not apply to litigants who have counsel. *See Wagner v. Daewoo Heavy Indus. Am. Corp.*, 314 F.3d 541, 542 n.1 (11th Cir. 2002).

10

In deciding whether a more carefully drafted *pro se* complaint might state a claim, i.e., whether an amendment would be futile, we have placed a heavy thumb on the scale in favor of answering that question in the affirmative. *See, e.g.*, *Silva v. Bieluch*, 351 F.3d 1045, 1049 (11th Cir. 2003) ("We cannot say it is scarcely possible that a more carefully drafted complaint might state a free speech claim."); *O'Halloran v. First Union Nat. Bank of Fla.*, 350 F.3d 1197, 1206 (11th Cir. 2003) ("Because a more carefully drafted complaint could conceivably state a valid claim, we VACATE the dismissal and REMAND, with instructions to allow the trustee leave to amend his complaint."). As we explained in *Bank*, "the purpose of pleading is to facilitate a proper decision on the merits. Dismissing an action without granting even one chance to amend is contrary to this goal." 928 F.2d at 1112 n.6.

Upon review of Mr. Bettencourt's *pro se* complaint, we conclude that the district court erred by not providing an opportunity to amend.[8] Although Mr. Bettencourt is unable to state a claim against Captain Williams and Sargent Wade in light of his concession on appeal that he never informed them that he was being sexually harassed and needed protective custody, *see* Appellant's Br. at 8, we have

---

[8] Indeed, Mr. Bettencourt filed a motion to amend his complaint with the district court, which the court, having adopted in part the magistrate judge's report and recommendation, improperly interpreted as an attempt to add new claims unrelated to his § 1983 action.

no trouble concluding that it is conceivable Mr. Bettencourt may be able to state a § 1983 claim against the remaining defendant prison officials.[9]

## IV.

We affirm the district court's dismissal of Mr. Bettencourt's § 1983 claim against Ms. Cleveland for failing to exhaust his administrative remedies, but vacate and remand the dismissal with prejudice so that Mr. Bettencourt may be allowed to amend his § 1983 complaint.

AFFIRMED IN PART, VACATED IN PART, AND REMANDED.

---

[9] The defendant prison officials argue on appeal that they are entitled to qualified immunity, but it would be premature to address qualified immunity prior to Mr. Bettencourt amending his complaint.