[DO NOT PUBLISH]

In the

# United States Court of Appeals

## For the Eleventh Circuit

_____

No. 22-12180

Non-Argument Calendar

_____

CANDICE HAGAN,

Plaintiff-Appellant,

*versus*

COMMISSIONER, GEORGIA DEPARTMENT OF
CORRECTIONS,
PULASKI SP WARDEN,
GEORGIA DEPARTMENT OF CORRECTIONS,

Defendants-Appellees.

_____

Appeal from the United States District Court
for the Middle District of Georgia
D.C. Docket No. 5:22-cv-00107-TES

_____

Before WILSON, LUCK, and JULIE CARNES, Circuit Judges.

PER CURIAM:

Plaintiff appeals the district court's order dismissing her 42 U.S.C. § 1983 and state negligence claims pursuant to Federal Rule 12(c). Additionally, Plaintiff appeals the district court's failure to sua sponte grant leave for her to amend the complaint before dismissing her claims and entering judgment for Defendants. After a careful review of the record and the briefing submitted by the parties, we find that the district court did not err when it dismissed Plaintiff's claims and did not abuse its discretion when it declined sua sponte to give Plaintiff an opportunity to amend. Therefore, we affirm.

## BACKGROUND

This case arises from injuries Plaintiff sustained while she was incarcerated in the Bleckley County Residential Substance Abuse Treatment ("RSAT") Center. At the time of Plaintiff's injuries, Defendant Mickens was the warden of Pulaski State Prison, the facility that operates the RSAT Center, and Defendant Ward was the Commissioner of Defendant Georgia Department of Corrections ("GDC"), the agency in charge of the prison and the RSAT.

While incarcerated in February 2020, Plaintiff slipped on liquid left on the concrete floor of a common area in the RSAT Center. As a result of her fall, Plaintiff sustained injuries to her right shoulder, forearm, and wrist. A correctional officer arrived shortly after Plaintiff's fall and questioned her about the fall and her injuries. After telling the officer she was experiencing pain in her right shoulder, forearm, and wrist, Plaintiff was placed in a wheelchair and taken to the RSAT Center's nursing station. An initial examination revealed pain in Plaintiff's shoulder and visible swelling and injury to her forearm and wrist.

Plaintiff subsequently was transported to a local emergency room ("ER") and evaluated by an ER physician, who diagnosed Plaintiff with a severe fracture to her right forearm and wrist. The physician determined that Plaintiff's injuries required immediate surgery, which was arranged to take place at Coliseum Medical Center ("Coliseum") in Macon, Georgia. Plaintiff traveled to Coliseum with a correctional officer that same day, and she was seen by an orthopedic surgeon there who concurred in her need for surgery. The surgery was scheduled for the following morning, but the correctional officer told Plaintiff she could not stay overnight at Coliseum and needed to return to the RSAT Center, which she did.

The next morning, Plaintiff awoke with severe pain and swelling in her right forearm and wrist and asked the RSAT Center nurse for her prescribed medication. The nurse allegedly advised Plaintiff that she would not be given any medication and that she

was not being taken for her scheduled surgery at Coliseum. Over the following week, Plaintiff repeatedly asked for her prescribed medication and to be transported for her surgery. These requests were denied.

A week after her initial injury, Plaintiff, still experiencing severe pain and swelling in her right forearm in wrist, was taken to a surgeon in Eastman, Georgia for additional treatment. The surgeon examined Plaintiff, noted severe swelling and deformities in her right forearm and wrist, and immediately took her into surgery. Plaintiff claims she suffered permanent injury to her forearm and wrist—including paresthesia, numbness, and loss of feeling and dexterity in her right hand—that was caused by the delay in treatment and could have been avoided if Defendants had allowed her to receive the initially scheduled surgery.

Represented by counsel, Plaintiff filed this lawsuit in February 2022 against Defendant GDC, Defendant Mickens, and Defendant Ward in the Superior Court of Pulaski County, Georgia, asserting claims under state law and 42 U.S.C. § 1983. Plaintiff broadly alleged in her complaint that Defendants violated state and federal law governing the medical treatment of an individual who is injured while in the GDC's care, causing her to incur compensable damages and attorney's fees. In support of her right to recover under state law, Plaintiff claimed Defendants were negligent in their execution of various duties they owed to her, and that they were liable under a respondeat superior theory for the actions of their employees who also were negligent. As to her § 1983 claims,

Plaintiff asserted that Defendants were deliberately indifferent to her serious medical needs and that their actions were "cruel and unusual in violation of" her constitutional rights.

Defendants removed Plaintiff's complaint to the United States District Court for the Middle District of Georgia and filed a motion for judgment on the pleadings under Federal Rule 12(c). In support of the motion, Defendants argued that sovereign immunity, the Eleventh Amendment, and the text of § 1983 barred Plaintiff's federal constitutional claim against Defendant GDC. As to Ward and Mickens, Defendants argued that Plaintiff failed to properly state a § 1983 claim against those Defendants individually because she did not allege (1) any facts suggesting that either Ward or Mickens was personally involved in the conduct underlying her claim or (2) a plausible basis for imposing supervisory liability. Finally, Defendants argued that Plaintiff's state negligence claim was barred by the doctrine of sovereign immunity and the Georgia Tort Claims Act ("GTCA").

The district court granted the Rule 12(c) motion and dismissed Plaintiff's complaint in its entirety. Specifically, the court held that sovereign immunity and a plain reading of § 1983 barred Plaintiff's § 1983 claim against Defendant GDC. As to Defendants Ward and Mickens, the court concluded that Plaintiff's § 1983 claims against them failed because she did not plausibly allege that either of these Defendants was responsible for the misconduct alleged in her complaint. Regarding Plaintiff's state claims, the court held that Defendants Ward and Mickens were immune from

liability under the GTCA and that Defendant GDC was the proper defendant for Plaintiff's state negligence claim pursuant to O.C.G.A. § 50-21-25(b). Nevertheless, the court held that a negligence claim asserted against GDC still failed because of the discretionary function exception to Georgia's limited waiver of immunity in the GTCA.

Plaintiff appeals, arguing that (1) she was held to a higher pleading standard than required, (2) the district court erroneously failed to convert the motion for judgment on the pleadings to a motion for summary judgment because the court did not expressly exclude extrinsic documents, and (3) the court should have sua sponte offered her an opportunity to amend her complaint before dismissing it. Plaintiff does not address in her appellate briefing the district court's rulings that (1) sovereign immunity and a plain reading of § 1983 barred her federal claim against Defendant GDC and (2) the GTCA barred her state negligence claims against all Defendants. Those claims are thus abandoned, and we do not consider them here. *See Sapuppo v. Allstate Floridian Ins. Co.*, 739 F.3d 678, 680 (11th Cir. 2014) ("When an appellant fails to challenge properly on appeal one of the grounds on which the district court based its judgment, he is deemed to have abandoned any challenge of that ground, and it follows that the judgment is due to be affirmed."). As for Plaintiff's § 1983 claims against Ward and Mickens individually, we are unpersuaded by her arguments on appeal and thus affirm the district court's order dismissing those claims as well as its decision not to sua sponte offer an opportunity for Plaintiff to amend her complaint before dismissing it.

## DISCUSSION

### I.    Standard of Review

We review de novo the district court's order granting judgment on the pleadings.  *See Garcia-Bengochea v. Carnival Corp.*, 57 F.4th 916, 928 (11th Cir. 2023).  "Judgment on the pleadings is appropriate where there are no material facts in dispute and the moving party is entitled to judgment as a matter of law."  *Cannon v. City of W. Palm Beach*, 250 F.3d 1299, 1301 (11th Cir. 2001).  "In determining whether a party is entitled to judgment on the pleadings, we accept as true all material facts alleged in the non-moving party's pleading, and we view those facts in the light most favorable to the non-moving party."  *Perez v. Wells Fargo N.A.*, 774 F.3d 1329, 1335 (11th Cir. 2014).  We likewise review de novo whether a district court was required to convert a motion to dismiss into a motion for summary judgment.  *See SFM Holdings, Ltd. v. Banc of Am. Secs., LLC*, 600 F.3d 1334, 1336–37 (11th Cir. 2010).  We review for abuse of discretion the district court's decision to dismiss Plaintiff's complaint without sua sponte offering her an opportunity to amend it.  *See Woldeab v. Dekalb Cnty. Bd. of Ed.*, 885 F.3d 1289, 1291 (11th Cir. 2018).

### II.    Dismissal of Claims as Insufficiently Pled

Plaintiff argues on appeal that the district court erred by holding her complaint to a higher pleading standard than required when it dismissed her § 1983 claims against Defendants Ward and Mickens.  Plaintiff argues further that the district court improperly failed to consider Defendant GDC's policies and procedures, which

she attached in opposition to the motion for judgment on the pleadings, under the incorporation by reference doctrine. We are unpersuaded by either argument.

As to the applicable pleading standard, a plaintiff is required to provide in her complaint "a short and plain statement" of her claim showing she "is entitled to relief." Fed. R. Civ. P. 8(a)(2). This pleading standard "does not require 'detailed factual allegations,' but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). As such, a complaint that only provides "labels and conclusions or a formulaic recitation of the elements of a cause of action" is not adequate to survive a motion to dismiss. *Chaparro v. Carnival Corp.*, 693 F.3d 1333, 1337 (11th Cir. 2012) (quotation marks and citation omitted). Rather, the complaint "must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Id.* (quotation marks and citation omitted). A claim is plausible on its face when it is supported by "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. "[T]hreadbare recitals of the elements of a cause of action and conclusory statements are insufficient" to meet this standard. *Newbauer v. Carnival Corp.*, 26 F.4th 931, 934 (11th Cir. 2022) (citation and quotation marks omitted)).

We apply a two-step framework to determine whether a complaint is sufficient to withstand a motion to dismiss. At the first

step, we "eliminate any allegations in the complaint that are merely legal conclusions." *Id*. At the second step, we "assume the veracity of the well-pleaded factual allegations and then determine whether they plausibly give rise to an entitlement to relief." *Id*. at 934–35 (citation and quotation marks omitted)).

Applying the above analysis to Plaintiff's complaint, most of the allegations underlying her § 1983 claim against Ward and Mickens fail at the first step because they are simply legal conclusions that track the elements of a deliberate indifference claim. However, two of Plaintiff's factual allegations do satisfy the framework's first step. First, Plaintiff's claims regarding the severity of her injuries are detailed and sufficiently pled. Second, the RSAT Center nurse's alleged statement that Defendants would not give any medication to Plaintiff or transport her for surgery also provides some factual basis. Accordingly, we consider below whether these two allegations "plausibly give rise to an entitlement to relief" by Plaintiff on her § 1983 claims asserted against Ward and Mickens individually.

Plaintiff's § 1983 claims against Ward and Mickens are based on a deliberate indifference theory. To prevail on such a theory, "a plaintiff must satisfy both an objective and a subjective inquiry." *Hoffer v. Sec'y, Fla. Dep't of Corr.*, 973 F.3d 1263, 1270 (11th Cir. 2020). The objective prong of the inquiry requires a plaintiff to demonstrate "an objectively serious medical need"—that is, a need "that has been diagnosed by a physician as mandating treatment or . . . that is so obvious that even a lay person would easily recognize

the necessity for a doctor's attention" and that "if left unattended, poses a substantial risk of serious harm." *Id.* As for the subjective prong, the plaintiff must show that the defendant "(1) had subjective knowledge of a risk of serious harm; (2) disregarded that risk; and (3) acted with more than gross negligence." *Harper v. Lawrence Cnty.*, 592 F.3d 1227, 1234 (11th Cir. 2010) (quoting *Burnette v. Taylor*, 533 F.3d 1325, 1330 (11th Cir. 2008)). Assuming both requirements are met, the plaintiff must then establish a causal link "between the defendant's indifference and [her] injury." *Roy v. Ivy*, 53 F.4th 1338, 1346–47 (11th Cir. 2022).

Plaintiff sufficiently pled an objectively serious medical need: a severe fracture following her fall. Further, citing the confirmation by the Coliseum surgeon, Plaintiff adequately alleged her need to promptly receive surgery. Turning next to the subjective prong, Plaintiff's only allegation relevant to that inquiry is the RSAT Center nurse's statement that she would not be given any medication or transported for surgery. Even assuming the nurse's statement is true and drawing all inferences from it in favor of Plaintiff, the statement does not provide a factual basis to suggest that either Ward or Mickens was subjectively aware of Plaintiff's injuries, nor does Plaintiff allege such subjective awareness elsewhere in her complaint. In comparison, the correctional officer who transported Plaintiff to and from the emergency room and the RSAT Center nurse who responded to Plaintiff's request for medication were perhaps aware of Plaintiff's objectively serious medical need. However, Plaintiff did not assert claims against either of those individuals or even name them in her complaint. Instead,

she asserted claims only against Defendant Ward, the commissioner of the Georgia correctional system, and Defendant Mickens, the warden of a prison that operates the rehabilitation facility where Plaintiff was housed when she was injured.

Presumably because of the lack of personal participation—or even alleged awareness—by Ward or Mickens of her injury, Plaintiff focuses in her complaint on a theory of supervisory liability. Supervisory liability under § 1983 "must be based on something more than the theory of respondeat superior." *Myrick v. Fulton Cnty., Ga.*, 69 F.4th 1277, 1297 (11th Cir. 2023) (noting that "the standard by which a supervisor is held liable in his . . . individual capacity for the actions of a subordinate is extremely rigorous" (quotation marks omitted)). Instead, a plaintiff must allege either that "the supervisor personally participate[d] in the alleged unconstitutional conduct" or that "there is a causal connection between the actions of a supervising official and the alleged constitutional deprivation." *Id.* (quotation marks omitted). Relevant to our analysis here, a causal connection can be established "when a supervisor's custom or policy . . . result[s] in deliberate indifference to constitutional rights or when facts support an inference that the supervisor directed the subordinates to act unlawfully or knew that the subordinates would act unlawfully and failed to stop them from doing so." *Harper*, 592 F.3d at 1236 (quoting *Cottone v. Jenne*, 326 F.3d 1352, 1360–61 (11th Cir. 2003)).

As discussed above, Plaintiff did not allege that either Ward or Mickens personally participated in or was even aware of the

conduct underlying her complaint. We therefore turn our focus to determine if Plaintiff otherwise alleged the necessary causal connection to establish supervisory liability. *See Harper*, 592 F.3d at 1236 ("Here, because there are no allegations in the Complaint regarding the supervisors' personal participation in the denial of . . . rights, we look to whether Plaintiff has alleged a 'causal connection.'"). Again, such a connection can be asserted by alleging (1) that a supervisor's custom or policy resulted in the deliberate indifference or (2) facts supporting an inference that the supervisor directed subordinates to act unlawfully or knew subordinates would act unlawfully but failed to stop them. *Id.* Plaintiff has done neither.

As an initial matter, Plaintiff did not allege that any custom or policy instituted by Ward or Mickens caused her harm. On the contrary, Plaintiff claimed the <u>failure</u> of prison officials to act in conformity with governing GDC policy caused her harm rather than any defective custom or policy. Likewise, Plaintiff did not allege that Ward or Mickens "directed . . . subordinates to act unlawfully or knew that the subordinates would act unlawfully and failed to stop them from doing so." 592 F.3d at 1236 (quoting *Cottone*, 326 F.3d at 1360–61). The only potentially relevant allegation to this issue is the RSAT nurse's statement suggesting Plaintiff was denied pain medication and immediate transport for surgery. Assuming the nurse's statement is true and viewing it in the light most favorable to Plaintiff, the statement does not suggest—and is insufficient in and of itself to allow one to infer—that Ward or Mickens had ordered their subordinates to deny medication or

treatment for Plaintiff's injuries or that they knew their subordinates would deny such care and failed to stop them. Nor does Plaintiff allege any facts to suggest that Ward or Mickens had notice of a "persistent pattern" of similar violations that might have made them aware of a likelihood that their subordinates would be deliberately indifferent to an inmate's serious medical needs. *See Goebert v. Lee Cnty.*, 510 F.3d 1312, 1332 (11th Cir. 2007).

In short, Plaintiff did not allege in her complaint a viable basis for holding either Ward or Mickens individually liable for her injuries under § 1983. Although Plaintiff argues the district court erred by "applying a higher pleading standard" to her complaint and "wrongly exclude[d] facts" for being conclusory, she does not point to—and we have not found in our independent review of the complaint—any specific factual allegations that were wrongly excluded. As such, the district court correctly dismissed Plaintiff's § 1983 claims asserted against Defendants Ward and Mickens in their individual capacity. *See McCullough v. Finley*, 907 F.3d 1324, 1334 (11th Cir. 2018) (dismissing as conclusory allegations that government officials created and implemented unlawful policies in "[t]he absence of allegations about any individual acts of the [government officials]").

## III.    Consideration of Matters Outside the Pleadings

Plaintiff argues in the alternative that the district court erred by not converting the motion for judgment on the pleadings into a motion for summary judgment because the court did not expressly exclude certain GDC policies that she attached to her response. As

discussed below, this argument is foreclosed by binding circuit precedent.

On a Rule 12(b)(6) or 12(c) motion, if "matters outside the pleadings are presented to and not excluded by the court, the motion must be treated as one for summary judgment under Rule 56" and the parties must be given "a reasonable opportunity to present all the material that is pertinent to the motion." Fed. R. Civ. P. 12(d). "[I]t is within the district court's discretion whether to accept extra-pleading matter on a motion for judgment on the pleadings and treat it as one for summary judgment or to reject it and maintain the character of the motion as one under Rule 12(c)." 5C Arthur R. Miller & A. Benjamin Spencer, *Federal Practice and Procedure* § 1371 (3d ed. & April 2023 update). "A statement in a pleading may be adopted by reference elsewhere in the same pleading or in any other pleading or motion. A copy of a written instrument that is an exhibit to a pleading is a part of the pleading for all purposes." Fed. R. Civ. P. 10(c). "Because Rule 10(c) incorporates into the pleadings all exhibits attached thereto, the district court can consider those documents in deciding a Rule 12(c) motion without converting it into a Rule 56 summary judgment motion." 5C Miller & Spencer, *supra*, § 1371. "Furthermore, when the plaintiff fails to attach a pertinent document, it has been held that the defendant can attach that document to a motion for judgment on the pleadings without converting the motion into one for summary judgment." *Id.*

Applying the above rules in *Harper*, this Court held that "[a] judge need not convert a motion to dismiss into a motion for summary judgment as long as he or she does not consider matters outside the pleadings" and "'not considering' such matters is the functional equivalent of 'excluding' them—there is no more formal step required." 592 F.3d at 1232 (rejecting the plaintiff's argument "that it was not enough for the court to have declined to consider the outside documents in ruling on the motion to dismiss—rather, it should have *excluded* them pursuant to Rule 12(d)"). *See also Ware v. Assoc. Milk Producers, Inc.*, 614 F.2d 413, 414 (5th Cir. 1980) (noting the "express wording" of the district court's order indicating that materials outside the pleading were not considered).[1] In contrast, this Court has held that a district court ordering discovery and relying on the documents produced in discovery to flesh out claims is an example of the record demonstrating outside materials were considered by the district court in deciding a motion. *See Orion Marine Constr., Inc. v. Carroll*, 918 F.3d 1323, 1330 (11th Cir. 2019) ("Because the district court considered materials outside the pleadings in deciding the [motion to dismiss], though—and indeed, affirmatively directed discovery—that motion may properly be converted into a motion for summary judgment.").

Here, Plaintiff concedes the district court did not reference or rely on the GDC policies she attached to her response in ruling

---

[1] Decisions of the former Fifth Circuit rendered prior to October 1, 1981, constitute binding precedent in the Eleventh Circuit. *Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir. 1981) (en banc).

on the motion for judgment on the pleadings.  Indeed, Plaintiff argues in her appellate brief that the district court erred by not considering those policies.  Because the district court was not obligated to consider an extrinsic document attached to Plaintiff's response, nor was it required to expressly state that it did not consider the document, the court did not err by reviewing the motion for judgment on the pleadings under Rule 12(c) instead of Rule 56.

## IV.    Amendment of Plaintiff's Complaint

Finally, Plaintiff argues on appeal that the district court erred by dismissing her complaint without sua sponte giving her an opportunity to amend.  "A district court's discretion to deny leave to amend a complaint is severely restricted by [Federal Rule 15], which stresses that courts should freely give leave to amend when justice so requires."  *Woldeab*, 885 F.3d at 1291.  Pursuant to Rule 15, "[w]here a more carefully drafted complaint might state a claim, a plaintiff must be given at least one chance to amend the complaint before the district court dismisses the action with prejudice."  *Id.* (quotation marks omitted).  However, a district court need not allow an amendment that would be futile.  *See Garcia v. Chiquita Brands Int'l, Inc.*, 48 F.4th 1202, 1220 (11th Cir. 2022).  Further, "our precedent is clear that '[a] district court is not required to grant a plaintiff leave to amend [her] complaint sua sponte when the plaintiff, who is represented by counsel, never filed a motion to amend nor requested leave to amend before the district court.'"  *Newbauer*, 26 F.4th at 936 (alteration in original) (quoting *Wagner v. Daewoo Heavy Indus. Am. Corp.*, 314 F.3d 541, 542 (11th Cir. 2002) (en banc)).

Plaintiff was represented by counsel.  Yet, before the district court, she never moved to amend her complaint—either during the pendency of Defendants' motion to dismiss or after the district court had dismissed the complaint.  Instead, Plaintiff raises the amendment issue for the first time on appeal.  Thus, under our precedent, the district court was not required sua sponte to grant Plaintiff leave to amend in this situation unless it dismissed Plaintiff's complaint on shotgun pleading grounds.  *See Vibe Micro, Inc. v. Shabanets*, 878 F.3d 1291, 1296 (11th Cir. 2018) ("When a litigant files a shotgun pleading, is represented by counsel, and fails to request leave to amend, a district court must sua sponte give him one chance to replead before dismissing his case with prejudice on non-merits shotgun pleading grounds.").  Here, the district court expressly chose not to dismiss Plaintiff's complaint on shotgun pleading grounds, and instead ruled on the merits.

We likewise decline to characterize Plaintiff's complaint as a shotgun pleading.  Shotgun pleadings come in four categories, one of which is "asserting multiple claims against multiple defendants without specifying which of the defendants are responsible for which acts or omissions, or which of the defendants the claim is brought against."  *Weiland v. Palm Beach Cnty. Sheriff's Off.*, 792 F.3d 1313, 1323 (11th Cir. 2015).  However, what unifies all categories of shotgun pleadings "is that they fail to one degree or another, and in one way or another, to give the defendants adequate notice of the claims against them and the grounds upon which each claim rests."  *Id*.  In choosing to rule on the merits, the district court found that despite Plaintiff's complaint exhibiting some characteristics of

a shotgun pleading, the complaint provided sufficient notice to Defendants of the claims asserted against them and the grounds upon which the claims rested.

We agree with the district court's assessment. Plaintiff's complaint made clear that she was asserting § 1983 deliberate indifference claims against both Ward and Mickens in their individual capacities to recover for injuries she suffered as a result of her delayed treatment following a fall at the RSAT facility where she was incarcerated at the time. The complaint failed to allege any viable basis for imposing individual liability on Ward or Mickens, but it did not fail to give either of those defendants "adequate notice of the claims against them and the grounds upon which each claim rests." *Id.* As such, the complaint was not a shotgun pleading and, given that Plaintiff was represented by an attorney, the district court did not abuse its discretion by failing sua sponte to give her an opportunity to amend before dismissing her claims.

## CONCLUSION

For the reasons stated above, we find no error in the district court's order dismissing Plaintiff's complaint and we likewise hold that the court did not abuse its discretion by failing sua sponte to give Plaintiff an opportunity to amend. Therefore, we affirm.

**AFFIRMED**.